UNITED STATES *v.* PASTENE & Co. (No. 745).[1]

DECAYED MACARONI.

 It is not contended by either party that macaroni is a perishable article within the meaning of the first part of subsection 22 of section 28, tariff act of 1909. The evidence disclosed by the record justifies the conclusion that the macaroni for which allowance was made was, before arrival in port, not merely damaged, but destroyed, and that therefore as to the destroyed portion there was no importation.

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26203 (T. D. 31788).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* assistant attorney, on the brief), for the United States.
*Searle & Pillsbury* (*William E. Waterhouse* of counsel) for appellees.

  Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

On November 18, 1909, the steamship *Cairnstrath* left Naples, Italy, carrying under the forward hatch some 30,000 boxes of macaroni, 20,500 of which were consigned to P. Pastene & Co. (Inc.), at Boston, Mass. In the ordinary course of events the *Cairnstrath* should have completed her voyage in 18 days, but she encountered such stormy weather that she did not make her port of destination until January 4, 1910, 47 days after her departure. Due to the fact that the bow of the vessel was badly injured by heavy seas her forepeak was flooded on November 24 and in consequence 5,500 boxes of the macaroni stowed under hatch No. 1 were injured by sea water,

---

some of the boxes being completely saturated. The vessel was discharged within 3 or 4 days after her arrival and the Government examiner reported that the contents of 2,584 boxes of macaroni were damaged 75 per cent, the contents of 102 boxes 50 per cent, and the contents of 116 boxes 100 per cent. The collector of customs assessed full duty on the merchandise and against this action the importers protested, claiming that that part of the macaroni which had absorbed moisture or which had been soaked with salt water was at the time of the importation no longer macaroni, and that the same was not subject to duty, or that if subject to duty an allowance should be made for the depreciation in the value thereof caused by the absorption of water and the resulting decay. The Board of General Appraisers sustained the protest as to that part of the merchandise which was reported "damaged" by the examiner and held that from the duties assessed thereon should be deducted the percentage of damage officially found. From this decision of the board the Government appealed, and now argues that full duties were properly assessed, first, because the macaroni was not a perishable article within the meaning of subsection 22 of section 28, and, second, because the goods were not abandoned to the United States within 10 days after entry as required by the latter part of the subsection just mentioned. The following is the part of subsection 22 of section 28 which we think it material to consider:

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee. Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, wares or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided, further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part. * * *.

It is not contended by either party to the litigation that macaroni is a perishable article within the meaning of the first part of subsection 22 of section 28 and, therefore, there seems to be but one real issue

raised by the appeal, and that is, Was the macaroni which was relieved of duty by the board imported? If the merchandise came within the customs jurisdiction damaged only, that is to say injured in its quality, although still retaining its identity and characteristic nature, then it seems clear that an importation of the goods can not be successfully denied. On the other hand, if the goods, consequent upon the wetting received, became decomposed and practically worthless as merchandise prior to their arrival within the limits of the port, it can not be said that they were imported into the United States within the meaning of the tariff laws, particularly as Congress seems to have expressly recognized in the second proviso to the subsection that "total destruction" may result in a "nonimportation in whole or in part."

An article is damaged when its value, its usefulness, or its efficiency is only impaired. It is destroyed when its value, usefulness, and that which makes it what it is are completely lost. We think that the evidence disclosed by the record justifies the conclusion in this case that the merchandise for which allowance was made was, before arrival in port, not merely damaged, but destroyed, and that therefore it was not imported.

Macaroni is a paste made from the flour of hard, glutinous wheat mixed with water. This paste is pressed into slender tubes through the bottom of a perforated vessel and then dried in the sun or at a low temperature. The testimony shows that if stored in bulk and not in separate wrappers macaroni will sour and spoil in three or four weeks. If, however, it is wrapped in paper and packed in boxes, it will keep as long as six or seven months, provided it be stored in a dry, ventilated place. If it is stored in a damp cellar, it will not last at all. The macaroni here involved was packed in boxes and stowed in the hold of a vessel, which was flooded with water to the extent that some of the boxes were dripping wet when discharged and all of them were exposed to damp and moisture for some 40 days before arrival. Considering the nature of the merchandise and the results which would naturally follow a wetting or exposure to moisture in a damp, badly ventilated hold, it was certainly to be expected that some considerable portion, if not all, of the macaroni in the boxes so exposed would be absolutely ruined. And that such was the outcome is borne out by Ernest El de Feo, traffic manager for the importers, who testified that the contents of the boxes which were opened and examined were a mass of mold, varying in percentage according to the amount of moisture absorbed. Of course, in those boxes which were exposed to nothing more than dampness, or which were not completely covered with water, or from which the water was quickly removed by the pumping out of the vessel, there was a

percentage of macaroni which was either not exposed at all or so slightly exposed that it still retained the characteristic features of macaroni. We think, therefore, that the appraiser's report that 2,584 boxes were 75 per cent damaged, 102 boxes 50 per cent damaged, and 116 boxes 100 per cent damaged can not be construed to mean that the macaroni in the boxes was only impaired in value and that none of it was destroyed. In our opinion, the appraiser took the boxes as the unit of his calculation, and when he speaks of so many boxes 75 per cent damaged he means nothing more nor less than that 75 per cent of the contents were spoiled. This conclusion seems to be sustained by that part of the report which states that 116 boxes were 100 per cent *damaged*. To argue that the case is one of damage and not destruction, because the contents of the boxes were ruined in part only, appears to us wholly untenable, especially as the United States Supreme Court in Lawder *v*. Stone (187 U. S., 281) declined to hold that some sound pineapples mixed with a slush of putrid ones made the whole mass dutiable as pineapples. The fact that 800 boxes of the macaroni on which an allowance was made were sold for $50 as fuel, or as food for horses, is no proof whatever, in our opinion, that the macaroni for which duties were deducted had some commercial value. With the exception of 116 boxes "damaged" 100 per cent, all of the boxes contained from 25 to 50 per cent of undestroyed macaroni, and for that rather than for the destroyed macaroni we think it fair to assume the purchase price of $50 was paid. Eight hundred boxes of macaroni, if sound, would have been worth in the market $1,200, and the fact that they brought only $50, far from establishing the contention of the Government, is very strong evidence that even that part of the macaroni held by the board to be dutiable was so far contaminated by contact with the spoiled macaroni that it also was well-nigh commercially valueless.

The cases cited on the issue of nonimportation by counsel for the Government are not in point, some of them because they involved articles damaged, but not destroyed, some of them because the destruction occurred subsequent to importation, and still others because the importer raised no question of nonimportation, but, assuming that the goods were damaged, stood upon his right to abandon them. Even if the cases had been in point, all of them were decided prior to Lawder *v*. Stone, and they must now yield to the doctrine laid down in that case, especially as there appears to be nothing in subsection 22 of section 28 indicating any intention on the part of Congress to alter, modify, or change the law as there interpreted. Indeed, as already stated, the subsection expressly recognizes that there may be a nonimportation in whole or in part by reason of total destruction, and to that extent at least approves the conclusion

reached by the Supreme Court in the case just mentioned. If any deduction is to be drawn from the changes accomplished by the subsection in the then existing law, it is that the legislature did not intend to impose additional hardships on the importer, but rather to relieve him of some of those which he was then enduring. By the subsection importers are now expressly authorized to secure allowances for shortage or nonimportation caused by "decay, destruction, or injury to fruit or other perishable articles." More than that, by the subsection it is now made practicable for the importer to ascertain promptly whether his goods have been damaged or destroyed without violating the provisions of section 2899 of the Revised Statutes.

If there be any power in Congress to levy duties on goods which have been destroyed before their arrival within the tariff jurisdiction of the United States, the intention to exercise that power should be clearly and unmistakably expressed. In the absence of any such expression we are not disposed to infer that Congress intended to add to the misfortunes of the importer by augmenting his losses and compelling him to pay duty on that which prior to importation had become commercially valueless.

The decision of the Board of General Appraisers is *affirmed.*