## HOULDER *v.* UNITED STATES (No. 1037).[1]

SUBSECTION 22 OF SECTION 28, CUSTOMS ADMINISTRATIVE LAW.

The importation was of dates and a part of the cargo was condemned and destroyed at the port of entry. Regardless of the regulations promulgated by the Secretary of the Treasury under this subsection and putting aside the question of the validity or of the application here of these regulations, the importer is without remedy for the reason there was a failure to comply with the mandatory requirements of the statute itself.—Lauricella *et al. v.* United States (4 Ct. Cust. Appls., 253; T. D. 33482), *infra.*

United States Court of Customs Appeals, May 23, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29911 (T. D. 32842).

[Affirmed.]

*Comstock & Washburn (George J. Puckhafer* of counsel) for appellant.
*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This importation was of dates at the port of New York. The invoice was of 2,269,946 pounds. The entered quantity was 2,121,660 pounds. Thirteen hundred and fifty-four boxes, or 94,780 pounds and a quantity of dates in bulk supposed to represent 308 boxes, were condemned by the board of health and destroyed. It appears that the shipment was made from the port of Bussorah, Arabia. The importing vessel encountered disaster upon route by reason of heavy weather and put into the port of Bermuda in distress. Considerable damage to her cargo was occasioned, with the result that the above stated quantity of this importation of dates was so far injured that they were, as stated, condemned and destroyed. The collector assessed duty upon the invoice quantity. The protestants, who are appellants here, made claim under subsection 22 of section 28 of the customs administrative law. The protestant further makes claim in the following language:

We further claim that there was a shortage and nonimportation of merchandise in this case, and allowance should be made to us for the duties which we were required to pay thereon.

It is maintained by the appellants that this count of the protest is in reliance upon Lawder *v.* Stone (187 U. S., 281), wherein it was held that under the statute as it existed at that time recoupment of duties paid for a shortage or nonimportation of goods which were destroyed and of no commercial value at the time the vessel crossed the line into the customs district could be maintained by timely protest under section 14 of the customs administrative law.

The Board of General Appraisers overruled the protest on the grounds that protestant had not complied with the regulations pro-

mulgated by the Secretary of the Treasury in T. D. 30023, which were made under subsection 22 of section 28 of the customs administrative law.

We do not think either claim of appellants is, upon this record, tenable.

In Lauricella *et al. v.* United States (4 Ct. Cust. Appls., 253; T. D. 33482), decided this day by this court, subsection 22 of section 28 of the customs administrative law was by the court, for the reasons and upon the authorities therein cited, arranged according to subject matter, and, as by the court deemed, expressive of the legislative intent. The subsection as thus arranged according to subject matter is as follows:

#### (1) SHORTAGE OR NONIMPORTATION.

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. * * * Unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, * * * proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon. * * * The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee.

#### (2) DAMAGE.

Nor shall any allowance be made for damage, but the importers may within ten days after such entry abandon to the United States all or any portion of goods, wares, or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares, or merchandise have been damaged or not or whether or not the same have any commercial value: *Provided further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, * * *. All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of the importers.

#### (3) CONDEMNATION.

Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector of said port,

notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and * * * if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided * * * no allowance shall be made in the liquidation of duties chargeable thereon.

As in that case we think in this many of the issues raised are under this arrangement easily determinable from the language of the subsection itself. This and other records before this court show that much confusion has arisen in the construction of and assertion of claims under this subsection by reason of the provisions therein *in pari materia* being scattered through the subsection. The aforesaid arrangement, we think, will obviate this confusion and render clear the rights and procedure therein established.

At the outset appellant maintains that the provisions of subsection 22 do not relate to other than perishable goods. He maintains that the use of the words in the first provision of subsection 22 relating to shortage or nonimportation of "fruit or *other* perishable articles" applies the subsection only to that class of fruit which is perishable, following this claim with an argument that within the tariff laws dates are not regarded as perishable fruit. Some comment is made in the case upon the modifying influence of the word "other" following the enumeration of subjects, as in the case of United States *v.* American Express Co. (2 Ct. Cust. Appls., 95, 99; T. D. 31636). That case, as well as the relevant decisions upon the subject which we have been able to examine, rested the modifying influence of this word upon the context of the entire paragraph or law rather than upon the intrinsic influences of the word "other" itself. That rule applied in this case is instructive and we think conclusive. The conjoint use of the words "fruit" and "perishable articles" predicated of different matters in the section is of frequent occurrence. Particularly in those phrases expressly relating to shortage and nonimportation do we find Congress, when speaking of the "proof to ascertain the shortage or nonimportation of fruit *or* perishable goods," omits the use of the word "other," though the expression is referable to the previous use of those words wherein the word "other" occurs. Manifestly, Congress in the latter provision deemed the term "fruit" unaffected by any modifying influence occasioned by the word "other" preceding the words "perishable articles." So in those provisions relating to condemnation in the last or third part of the subsection, in using the terms Congress speaks of "fruit or perishable articles" without the use of the word "other." As fruit and perishable goods were as much the subject of the provisions in the one case as the other, we think the incontrovertible intent of the Congress, as disclosed by

the whole subsection, was not to modify the word "fruit" occurring in the first instance in any sense by its association through the words "other perishable articles."

· In this case it is obvious from the letters addressed to the collector of customs upon the subject that there was confusion as to the nature of the claim asserted. The determinative facts in the case, so far as this subsection is concerned, are undisputed. They are that entry of the merchandise was made on December 29, 1910; that the merchandise was unladen on January 6, 1911; that it was condemned by the board of health of the city of New York January 7, 1911, and that no application of any kind, whether for an allowance, for damage, or as an offer of abandonment in the case of such, or for any other purpose, was made by the importer until January 14, 1911, many days after the statutory period for such had elapsed. This is true even were the letter of the importer to the collector of customs advising "that the health department are talking of condemning part of the dates consigned to us" deemed such, for it was not written until long after both entry and condemnation had actually occurred, to wit, January 12, 1911. With these facts established there seems to be no difficulty in the solution of the issues presented. If the claim were for shortage or nonimportation no proof under that subsection was filed within the statutory time—within 10 days after the merchandise had been landed. If the claim were for damage the statutory prerequisite that the importer must within 10 days after entry abandon to the United States that portion of the merchandise upon which claim is to be made was not complied with. If the claim were on account of condemnation by the health officers that portion of this requirement that the importer shall within 24 hours after the condemnation lodge with the collector notice thereof was not complied with. So that, regardless of the regulations promulgated by the Secretary under authority of this subsection and whether or not they are applicable, valid, or invalid, the importer is without remedy herein, for the reason that he has failed to comply in each case with the mandatory requirements of the statute.

Appellant, realizing upon appeal the insecurity of this position, in his brief and at the oral argument, has rested the case, in the main, upon the proposition that the provisions of subsection 22 of section 28 of the customs administrative law are cumulative with the right of the importer under section 14 of said customs administrative law to protest in a case of shortage or nonimportation, such as this was, without compliance with any of the statutory or regulative prerequisites established. This claim is asserted, as previously stated, under the authority of Lawder v. Stone, supra. The contention is, in other words, that subsection 22 is not the exclusive remedy available to the importer in such cases. We are unable to agree with this contention.

· At the time of the decision of Lawder *v.* Stone the only similar provision to said subsection was section 23 of the customs administrative act of June 10, 1890, which provided only that in cases of damage the goods could be abandoned to the United States and recovery had of duties paid. That provision was substantially if not precisely similar to the corresponding portion or part of subsection 22. There was no statute providing for a reimbursement of duties paid upon goods not imported because of shortage or nonimportation thereof caused by decay or otherwise existing at the time the importing vessel came within the customs jurisdiction. The Supreme Court held that such did not amount to an importation, and was not "goods, wares, and merchandise" "imported" within contemplation of the tariff law, and that the then section 23 of the customs administrative law applied to damage alone and not to shortage or nonimportation. The court, reviewing many statutes and customs decisions affording relief in specific cases of such shortage and nonimportation, inferred therefrom the absence of any purpose of Congress to refuse reimbursement in such cases and sustained the claim of the importer waged under the provisions of section 14 of the customs administrative law. By the tariff act of 1909 and subsection 22, however, there is left no room for such inference. Herein Congress has precisely legislated the right of recovery in such cases and provided a procedure whereby such reimbursement may be secured. Having provided such, we think, under the well-settled decisions of the Supreme Court and this court, the right is established and the remedy becomes exclusive. Nichols *v.* United States (7 Wall., 74 U. S., 122, 126); Schillinger *v.* United States (155 U. S., 163, 166); Ferry & Co. *v.* United States (85 Fed., 550, 553); Cheatham *et al. v.* United States (92 U. S., 85, 88, 89); Auffmordt *v.* Hedden (137 U. S., 310, 324); Anglo-Californian Bank *v.* Secretary of the Treasury (166 U. S., 722); Anglo-Californian Bank *v.* United States (175 U. S., 37, 39).

Indeed, appellant can not, upon his present standing in this court in the particular case, be heard to say that he has been denied the remedy afforded by section 14 of the customs administrative law in the premises, because that is the manner in which his case is here made. The contention resolves itself ultimately into one that said subsection 22 may or may not be regarded in such cases. There is no provision therein as to protest or the litigation of the claims asserted thereunder. The only provision for such litigation of appellant's rights is found in section 14 of the customs administrative law, and it is through the offices of that provision that the importer presents his claim to this court for ultimate decision. The crux of the contention really is, then, may the importer comply or fail to comply with the provisions of said subsection 22 as he may elect? We think not. We think subsection 22, after expressly granting the right of reimbursement for shortage and nonimportation and damage

and condemnation of goods, provides certain procedures as a condition precedent to the recovery of such reimbursement. When complied with the right of reimbursement accrues. When that right thus accrued is denied it may be enforced, as here sought, under the provisions of section 14 by due protest. Until complied with the right of reimbursement, asserted in Lawder v. Stone and established by express statute in this subsection, does not accrue. It follows that, upon the grounds here stated, rather than those stated in the decision of the Board of General Appraisers, the appellant is without remedy.

*Affirmed.*