## SHALLUS *v.* UNITED STATES (No. 1258).[1]

SUBSECTION 22 OF SECTION 28, TARIFF ACT OF 1909.

Part of the consignment of potatoes was condemned at the port of entry by the board of health as unfit for use. Certificates to this effect were made by the inspector May 24, 1912. On May 14, preceding, the importer had served notice that he made application to have the merchandise assorted. No other notice was given. The requirements of the statute as to notice are mandatory, and they were not complied with.—Houlder *v.* United States (4 Ct. Cust. Appls., 247; T. D. 33480); Lauricella *et al. v.* United States (4 Ct. Cust. Appls., 253; T. D. 33482).

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33291 (T. D. 33677).

[Affirmed.]

*Spence Cheney* for appellant.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Frank H. Shallus during the month of May, 1912, imported at the port of Baltimore a quantity of potatoes. Upon the arrival of the importing vessel it was discovered that a part of the importation was so badly decayed as to be worthless. Two entries were made. As to entry 3203 the weigher duly certified that it consisted of 4,478 bags, of which 1,333 bags were condemned. As to entry 3173 the weigher duly certified that it consisted of 1,297 bags, of which 171 bags were condemned. The collector, however, took duty upon the net weight of the aggregate number of bags in each case. It appears from the record that in each case the condemned potatoes were by the health department of the city of Baltimore destroyed as unfit for use. Certificates to this effect in each case were made by the inspector May 24, 1912. On May 14, 1912, the importer served notice upon the collector of customs at that port that he made application under penalty bond "to assort the good from the bad and worthless potatoes, said assorting to be done under the supervision of customs officers," the importer to pay all charges. No other notice or writing was served upon the collector or appears to have entered into the case. The protest makes claim upon the grounds of condemnation and nonimportation or shortage. It

---

[1] Reported in T. D. 34101 (26 Treas. Dec., 104).

alleges that there was a shortage according to the weigher's returns as shown by the record. Protestant, however, did not serve upon the collector any notice other than that above set forth.

This court, in Houlder v. United States (4 Ct. Cust. Appls., 247; T. D. 33480) and in Lauricella et al v. United States (4 Ct. Cust. Appls., 253; T. D. 33482), construed subsection 22 of section 28 of the tariff act of 1909 according to subject matter. That subsection so construed as to shortage or nonimportation was read and may be quoted as follows:

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. * * * Unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, * * * proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon. * * * The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee.

As to condemnation the requirements of the statute were construed as follows:

Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector of said port, notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and * * * if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided * * * no allowance shall be made in the liquidation of duties chargeable thereon.

The Board of General Appraisers overruled the protest upon the grounds that the notices required by subsection 22 of section 28 were not in any case given. This appears to be true.

Under the Houlder case, supra, it is clear that potatoes would be regarded within the provisions of said subsection as perishable articles. That being the case, under the doctrine of the same decision, the importer must comply with the provisions of that subsection and can not rely upon protest alone under subsection 14 of the customs administrative act. It was held in that case by this court that the provisions of subsection 22 of section 28 as to fruits and other perishable articles were exclusive and the provisions thereof

must be complied with in order to recover in such cases. If protestant relies upon shortage or nonimportation the record fails to disclose that the protesting firm complied with the legal requirements by filing with the collector within 10 days after the landing of the merchandise proof of such shortage or nonimportation. Even were we to assume that the provisions of said subsection 22 as to shortage or nonimportation did not require that the proof of such shortage or nonimportation required by the statute should be made by the importer when there is before the collector such official returns of various customs officials which establishes this fact, and should we further assume that the two reports of the inspectors and the two reports from the surveyor's office of the weigher's returns constitute such evidence, there is not in the record, nevertheless, any showing or evidence that these proofs were before the collector within the statutory time. The statute is mandatory in that it requires that the proof to ascertain destruction or nonimportation in such cases shall be lodged with the collector within 10 days after the landing of the merchandise, and unless so lodged "no allowance shall be made in the liquidation of duties."

It appears that the goods arrived May 6, 1912; that they were entered May 7, 1912. The certificates by the inspector that the merchandise was destroyed, while dated May 24, 1912, do not state when, and there is no proof as to when the goods were condemned or when they were actually destroyed or consigned to the dump. So the certificates of the surveyor's office that the goods were condemned do not recite when the potatoes were condemned and these certificates bear date of July 3, 1912. So that were these documents held such "proof" they would be insufficient in time.

Not only is the record barren of any notice of condemnation made or filed within 24 hours thereafter, as required by the statute, but, on the contrary, the collector certifies that none such was filed. The notices which were filed by the importer, which do not appear as a matter of record but are set forth in importer's brief, were not sufficiently such as required by any of the provisions of the statute. Their language seems to be intended as a basis for a subsequent claim for "damage." They were not, however, sufficient in form or substance for such, nor do the other requirements of the statute as to damage seem to have been complied with.

While it is regrettable that importers should be compelled to pay duties upon goods not received into the commerce of the country, the provisions of the statute are mandatory in the protection of the revenues, and it is not within the power of this court or of the customs officials to waive compliance. It is the mandate of Congress in the interests and protection of the public revenues.

The decision of the Board of General Appraisers is *affirmed.*