### UNITED STATES *v.* MOSCAHLADES BROS. (No. 1918).[1]

CONSTRUCTION, PARAGRAPH X OF SECTION 3, TARIFF ACT OF 1913—OLIVES IN BRINÉ— DRIED FIGS—"FRUIT."

The word "fruit" in paragraph X of section 3, tariff act of 1913, does not apply to only such fruits as are perishable.—Houlder *v.* United States (4 Ct. Cust. Appls., 247; T. D. 33480). Olives in brine, which will keep two to three years, and dried figs, which will keep six months to a year, are within its meaning. Any claim for allowance in duty by reason of their shortage or nonimportation caused by decay, destruction, or injury must be made according to the customs regulations promulgated pursuant to this paragraph.

United States Court of Customs Appeals, January 28, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42138.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, of counsel), for the United States.

*Walter F. Welch* for appellees.

---

[Oral argument Nov. 6, 1918, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DeVRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves the application of paragraph X of section 3 of the tariff act of 1913 as relates to olives in brine and dried figs damaged or destroyed, as hereinafter set forth.

The facts are shown by the following extracts from the testimony introduced on behalf of the importers, which is undisputed.

They entered some 315 barrels of ripe olives in brine, a number of cases of dried figs, and a quantity of prepared vegetables at the port of New York December 11, 1915. A member of the importers' firm visited the vessel which brought the merchandise three or four days after she arrived at her pier. He then saw that some of the figs were damaged by olive oil, that some of the barrels in which the olives had been contained were broken or empty, and that there was a mass in the ship, part of which had been shoveled out upon the pier, consisting of olive oil, olives, currants, figs, and cheese mixed together, which mixture had no commercial value and could not be sold. He then saw or learned that there were 3,000 or 4,000 packages of damaged goods, but, so far as disclosed, no one on behalf of importers made any attempt while the ship was being unladen, which required about 20 days, to ascertain whether any part thereof belonged to them. The importers had no notice of any condemnation or destruction of any of these goods by or from any board of health, nor were they present at any condemnation or destruction thereof. Importers did not report the condition of the damaged goods to the customs authorities, but after the goods were reported short they tried to get their money back from the customs officials, who informed them that the goods were destroyed by the board of health. Just how they tried to get their money back does not appear. Other similar goods were imported in the same vessel, some of which were damaged or destroyed in like manner. Olives in brine will keep two to three years and dried figs six months to a year.

The collector's report to the board, embodied in the record, states that the merchandise to which the protest relates was reported by the discharging inspectors to have been landed December 23, 1915, and condemned January 25, 1916, more than 10 days thereafter; that no notice such as is provided by the statute or the customs regulations was given by the importers.

From the gauger's report it appears that the missing merchandise in its integrity was not found by him. It is clear, and no claim is made to the contrary, that some 95 barrels of olives in brine, 12 cases of figs, and 3 cases of prepared vegetables, which were a part of the entry made as first herein stated, had escaped from their

containers, become a part of the conglomerate mixture above referred to, and were condemned and destroyed by some board of health.

Duty, nevertheless, was taken thereon because no claim had been made or proceedings instituted under paragraph X and the regulations of the Treasury Department made by authority thereof.

The importers protested, claiming that "the worthless goods condemned were a nonimportation and not subject to duty as imported merchandise." Other claims were made in the protest, but not relied upon here.

The Board of General Appraisers upon consideration of these undisputed facts overruled the protest as to the prepared vegetables, because there was no evidence as to whether they were perishable or not, and no error in such ruling is claimed here.

As to the olives in brine and the figs the protest was sustained, the board holding that they were not such perishable goods as are provided for in paragraph X of section 3 of the act of 1913, the applicable part of which we quote:

> No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction, or injury to fruit or other perishable articles imported into the United States, whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury.

This paragraph also contains other provisions, none of which are involved in this case.

No question is here made that the regulations prescribed by the Secretary of the Treasury under the authority of the paragraph are either unlawful or unreasonable, and as concededly they were not complied with we make no further reference thereto.

The contention of the importers below and here is summed up in the following quotation from their brief:

> The importers maintain that olives preserved in brine, which will keep three or four years, and dried figs, which will keep for a year, do not fall within the meaning of the word "fruit" as used in paragraph X. They maintain that the word "fruit" as there used covers only such fruit as is perishable.

We think this contention has already been adversely disposed of in this court in the case of Houlder v. United States (4 Ct. Cust. Appls., 247; T. D. 33480), which may be referred to.

The law of the case was there fully discussed by De Vries, Judge, speaking for the court. The applicable statutes were carefully examined and the relevant authorities considered. No argument is advanced by the importers in this case, so far as we can discover, that was not presented in that, and, adhering to the conclusion there reached, it follows that the judgment of the Board of General Appraisers must be reversed.

In addition to the discussion there contained, it may well be further observed that in the quoted part of paragraph X Congress has

seen fit to declare that fruit, without any qualification, should be subject to the provisions thereof. It does not declare either that such fruit shall be green or ripe, or that fruit which is preserved, whether in brine, sugar, sirup, or in any other manner, shall be excluded from its provisions. Fruit is one of the things provided for, and that olives and figs are fruit per se the importers do not question. That the olives were put up in brine to preserve them is undisputed, and undoubtedly the figs were dried for the same purpose. The incident that one is in brine and the other dried does not, however, alter the fact that they are entire olives and entire figs. We fear, if we were to undertake to interpret the word "fruit" as asked by the importers, it would result in confusion in administration—a thing which Congress undoubtedly designed to prevent by the enactment of the statute in question. All fruit is more or less perishable, some kinds being much more susceptible thereto than others, but all, whether in a preserved or natural condition, liable to *destruction* or *injury*, damage by reason of which, as well as by decay, is explicitly provided for in the paragraph.

No doubt it is a hardship for the importers, and that is urged upon us here, to be compelled to pay duty upon goods which have been so damaged as to become worthless. In this case, however, the answer is that such hardship is their fault. They have not seen fit to avail themselves of the provisions for relief in such cases provided in the statute.

The judgment of the Board of General Appraisers, so far as relates to the figs and olives, is *reversed.*