## POOLE CO. *v.* UNITED STATES (No. 1948).[1]

1. NONIMPORTATION—GOODS SPOILED IN TRANSIT.

It would be inequitable and presumably not within the intention of Congress to assess duty upon an article which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay, or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption. Articles thus circumstanced are not in truth within the category of goods, wares, and merchandise imported into the United States, within the meaning of the tariff laws. Lawder *v.* Stone (187 U. S., 281).

2. NONIMPORTATION—DAMAGE—DESTRUCTION.

Where part of a shipment has been utterly destroyed and not simply damaged by decay in transit, the case is one of destruction and not of damage. United States *v.* Pastene (3 Ct. Cust. Appls., 164; T. D. 32458). In such case the part destroyed is not dutiable, and the importer's claim to that effect may be presented by protest.

3. CONSTRUCTION, PARAGRAPH X, SECTION III, TARIFF ACT OF 1913, AND ARTICLE 600, CUSTOMS REGULATIONS, 1915—"PERISHABLE."

The adjective "perishable," when used as descriptive of commodities, primarily signifies a *natural* liability to *speedy* deterioration or decay, as is the case with fruit, fish, and similar articles, rather than the general tendency to deteriorate or decay from age or exceptional circumstances which is common to most, if not all, edible

---

[1] T. D. 38216 (37 Treas. Dec., 274).

articles. It will be given this meaning in paragraph X, Section III, tariff act of 1913, and article 600, Customs Regulations 1915 pursuant thereto, prescribing the method of claiming allowance in duty for shortage or nonimportation caused by decay, destruction, or injury to perishable merchandise. The term was employed with reference to the class of merchantable commodities to which a given importation may belong, rather than to the exceptional, perhaps latent, condition of the particular importation when exported.

4. CONSTRUCTION, ADMINISTRATIVE PRACTICE, FORCE OF.

The fact that Reggiano cheese is admitted to the Government warehouses (article 240, Customs Regulations, 1915), from which all "perishable" goods are barred by specific regulations, amounts to a practical official classification of Reggiano cheese as a nonperishable article, and is entitled to great force in an issue as to whether or not it is "perishable" within the meaning of that term in paragraph X, Section III, tariff act of 1913, and article 600, Customs Regulations, 1915, pursuant thereto.

5. REGGIANO CHEESE, GREEN, SPOILED IN TRANSIT.

Reggiano cheese was shown to be, when properly cured or seasoned, an article which would keep for a very long time. A particular shipment of it was made so green that part of it spoiled in transit. The importer was not compelled to make his claim for allowance under paragraph X, Section III, tariff act of 1913, and article 600, Customs Regulations, 1915, pursuant thereto, which provide for such claims in the case of "perishable" merchandise, but properly presented his claim by protest against the assessment of duty upon the spoiled portion.

United States Court of Customs Appeals, December 9, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42767.

[Reversed.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, of counsel) for appellant.
*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

[Oral argument Mar. 28, 1919, by Mr. Frederick W. Brooks, Jr., and Mr. Mulvaney.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consisted of 680 cases of cheese, of about 180 pounds each, which were shipped from Argentina on June 1, 1917, and arrived at New York on July 3. Entry was made on July 5.

It was discovered at once that a large part of the cheese was decayed and absolutely valueless at the time of its arrival in this country, and as soon as could be it was ascertained that this part amounted to 193 cases, nearly one-third of the shipment. In due course this refuse was destroyed by order of the health department of New York. The collector nevertheless assessed duty upon the entire 680 cases, whereupon the importers protested, contending that no duty should be collected upon that part which was absolutely spoiled at the time of its arrival at port. This defines the sole issue in the case.

The protest was submitted upon testimony to the Board of General Appraisers, who overruled it. The importer now appeals.

Upon general principles it seems clear that the absolutely spoiled part of the cheese in question was a nonimportation and accordingly not liable to duty, under the rule expressed in Lawder *v.* Stone (187 U. S., 281). In that case the court in commenting upon the earlier decision of Marriott *v.* Brune (9 How., 619), said:

The doctrine of this decision clearly supports the proposition that it would be inequitable and presumably not within the intention of Congress to assess duty upon an article which on a voyage to this country and before arrival within the limits of a port of entry had become utterly worthless by reason of casualty, decay, or other natural causes, and which the importer might rightfully abandon and refuse to receive or enter for consumption. In other words, that articles thus circumstanced were not in truth within the category of goods, wares, and merchandise imported into the United States, within the meaning of the tariff laws. The ruling in Marriott *v.* Brune was approved and applied in United States *v.* Southmayd (9 How., 637), and Lawrence *v.* Caswell, and it has been consistently recognized by this court that as a general rule duties are intended to be levied only upon the value of goods which possess some intrinsic or other value at the time when ordinarily the duty would attach on an article.

It may be observed also that the spoiled cheese of the present importation was not simply damaged but was in fact absolutely destroyed as a commodity at the time of its arrival in this country. In that particular therefore the case comes within the definitions expressed by this court in the following words in United States *v.* Pastene (3 Ct. Cust. Appls., 164, 167; T. D. 32458):

To argue that the case is one of damage and not destruction, because the contents of the boxes were ruined in part only, appears to us wholly untenable, especially as the United States Supreme Court in Lawder *v.* Stone (187 U. S., 281) declined to hold that some sound pineapples mixed with a slush of putrid ones made the whole mass dutiable as pineapples. The fact that 800 boxes of the macaroni on which an allowance was made were sold for $50 as fuel, or as food for horses, is no proof whatever, in our opinion, that the macaroni for which duties were deducted had some commercial value. With the exception of 116 boxes "damaged" 100 per cent, all of the boxes contained from 25 to 50 per cent of undestroyed macaroni, and for that rather than for the destroyed macaroni we think it fair to assume the purchase price of $50 was paid. Eight hundred boxes of macaroni, if sound, would have been worth in the market $1,200, and the fact that they brought only $50, far from establishing the contention of the Government, is very strong evidence that even that part of the macaroni held by the board to be dutiable was so far contaminated by contact with the spoiled macaroni that it also was well-nigh commercially valueless.

According to the foregoing authorities, therefore, it seems clear under the general principles established therein that the absolutely spoiled cheese in the present instance was a nonimportation and was not liable to import duty, and that the importer's claim to that effect may be presented by protest. Habicht *v.* United States (1 Ct. Cust. Appls., 53; T. D. 31031); United States *v.* Shallus (2 Ct. Cust. Appls., 332; T. D. 32074); United States *v.* Zito (3 Ct. Cust. Appls., 209; T. D. 32531).

The Government, however, contends that the importer nevertheless can not prevail in this case because of the fact that it failed to file its

claim to a nonimportation with the collector within the time and in the manner prescribed by the Treasury regulations provided by the department pursuant to paragraph X, Section III, tariff act of 1913. A part of this paragraph reads as follows:

X. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction, or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within 10 days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee.

The Treasury regulations which were promulgated in pursuance of this paragraph first appeared on October 4, 1909, T. D. 30025, and are now to be found in amended form in Art. 600, Customs Regulations, 1915. They require that in order to claim an allowance for shortage or nonimportation, caused by decay, destruction, or injury to imported fruit, or other perishable articles, notice of the intent to make such claim must be filed by the importer with the collector in a certain prescribed form within 96 hours after the arrival of the importing vessel, and that proof of the shortage or nonimportation must be filed with the collector within 10 days after the landing of the merchandise.

It is conceded in the present instance that the importer did not file its claim within the time and in the manner provided by the foregoing requirements in relation to "fruit or other perishable articles." If, therefore, the cheese of the present importation be a "perishable article" within the intent of the statute and the regulations aforesaid, the present protest can not be sustained. In answer to this it is claimed by the importer that the imported cheese is not a "perishable article" within the sense intended by the law and regulations, and consequently that it was not obliged to file its claim within the time and in the manner provided thereby. The present appeal therefore resolves itself into the question whether the imported cheese was a "perishable article" within the intent of the foregoing provisions.

The cheese in question is called Reggiano cheese, and before the war it was exclusively of Italian origin. During the war it became difficult, if not impossible, to procure a supply from Italy, and in consequence of this fact an industry developed and expanded in Argentina for the production of an imitation of the Italian product. The present shipment belonged to that class. When Reggiano cheese is rightly made it is very hard and tends constantly to become harder. In this condition it lasts for a very long time. The present importation, however, was shipped before the cheese had been properly

seasoned, and besides it experienced a voyage of more than a month's duration through the Tropics without refrigeration. In consequence of these combined causes the loss of about one-third of the consignment resulted.

In coming to inquire whether the imported cheese is a "perishable article" it should be noted that there is no proof in the record of any peculiar commercial usage of the word "perishable" in the related trade of this country, and consequently the word must be understood and accepted in its ordinary and common signification. The following definitions sufficiently present its meaning:

Standard: Perishable—Liable to perish; subject to destruction or decay; mortal; especially liable to decay speedily, as *perishable* goods; fruit is *perishable*. Perishable property (*Law*)—Property, as fish, fruit, etc., from its nature subject to speedy decay or deterioration.

Century: Perishable * * * Perishable property — Property which from its nature decays in a brief time, notwithstanding the care it may receive, as fish, fruit, and the like.

These definitions sustain the view that by common usage the adjective "perishable" when used as descriptive of commodities primarily signifies a natural liability to speedy deterioration or decay, as is the case with fruit, fish, and similar articles, rather than the general tendency to deterioration or decay from age or exceptional circumstances which is common to most if not all edible articles. This definition of the word "perishable" as used in the present paragraph received the approval of the board in the case of Fried & Son, T. D. 31650, wherein Judge Somerville, speaking for the board, said:

The Standard Dictionary defines the word "perishable" as follows: "Liable to perish; subject to destruction or decay; liable to perish speedily, as perishable goods, fruit is perishable." In our judgment the meaning intended by Congress to be attached to the word is the latter definition—"liable to perish speedily," like ordinary fruit. In another sense all articles that are edible perish in due course of time.

Accepting this definition as authoritative it seems fair to say that Reggiano cheese as a class is not a "perishable article." As already stated, when properly made and kept it tends to become very hard and to remain edible for a long time. Furthermore it appears in the record that Reggiano cheese is admitted to the Government warehouses, from which all "perishable" goods are barred by specific regulations. Customs Regulations, 1915, article 240. This fact is entitled to great force in the present controversy, since it amounts to a practical official classification of Reggiano cheese in general as a nonperishable article, within customs purview.

This view is commented on in the case of Fried & Son, supra, wherein the board held that macaroni was not a perishable article within the paragraph in question, saying:

Section 2962 of the Revised Statutes excepts from warehouse privileges perishable articles. Section 2975 of the Revised Statutes provides that all merchandise of a

perishable nature, and explosive substances deposited in any public or private bonded warehouse shall be sold forthwith.

It appears from the evidence that the article of macaroni is entitled to warehouse privileges, and we are of opinion that presumptively it is not regarded as a perishable article within the meaning of the Revised Statutes. The examiner of such merchandise at the port of New York testified that such merchandise would keep for a year or so without decay or injury. Common knowledge would seem to corroborate this statement.

On the other hand it appears that the present consignment was shipped before it was fully seasoned, and because of that fact, together with the long voyage through the Tropics without refrigeration, it was more or less liable to decay, and in fact did decay to the extent of almost one-third of the consignment. It may be assumed, however, that the unseasoned condition of the cheese exported was not intended and probably was not even known at the time. That is to say, it does not appear that green or unseasoned Reggiano cheese, such as would actually be perishable by nature, is known to commerce, or that the present importation was intended to be an article of that type.

In coming to inquire, therefore, whether the present importation was "perishable" or not it seems that the answer must depend upon whether this statutory term was employed by Congress with reference to the particular shipment in dispute in each case, or to the general class or kind of merchandise to which such shipment may belong. In this case, as stated, Reggiano cheese in general is not a perishable article, in the statutory sense, but the present importation, owing to peculiar conditions, which probably were not intended or foreseen, actually perished, not entirely but in large part.

In answer to this suggestion we conclude that when Congress referred to "perishable articles" in paragraph X, supra, the term was employed with reference to the class of merchantable commodities to which a given importation may belong, rather than to the exceptional, perhaps latent, condition of the particular importation when exported. Fruits as a class are first named in the provision, and next "perishable articles" as classes. Houlder v. United States (4 Ct. Cust. Appls., 247; T. D. 33480). According to this construction importers may know in advance of the arrival of their goods whether they are perishable or not, and accordingly they may be prepared to exercise greater diligence in examining and reporting upon articles of the classes named in the paragraph, but they are not held to the same degree of alertness respecting importations which do not belong by nature to either of these classes.

In the same manner the Customs service must classify importations according to their general characteristics when called upon to admit them as nonperishable articles to Government warehouses. It would not be practicable to have the decision in such case depend upon an

examination of each individual shipment. Importations must neces-sarily be classified for this purpose according to their class character-istics.

This view fully accords with the comments of this court in the case of United States *v.* Pastene (3 Ct. Cust. Appls., 164-166; T. D. 32458) In that case a vessel containing a shipment of Italian macaroni encountered stormy weather, and its bow was so badly injured by heavy seas that the fore peak was flooded, in consequence whereof the macaroni was injured by sea water. When unloaded from the vessel a part of the macaroni was found to be absolutely spoiled and valueless as a commercial commodity, nevertheless duty was assessed upon the entire shipment. The importers protested, claiming a nonimportation as to that part of the shipment which was no longer a commodity. This claim was sustained by the court. The provision of paragraph X, supra, relating to "fruit or other perishable articles" was then in force as part of subsection 22 of section 28, tariff act of 1909. It was not contended, however, by either party to the case that macaroni was a "perishable article" within the meaning of the provision, the sole issue being that of importation or nonimportation. Nevertheless the following descrip-tion of the commodity then in question bears significantly upon the present question:

Macaroni is a paste made from the flour of hard, glutinous wheat mixed with water. This paste is pressed into slender tubes through the bottom of a perforated vessel and then dried in the sun or at a low temperature. The testimony shows that if stored in bulk and not in separate wrappers macaroni will sour and spoil in three or four weeks. If, however, it is wrapped in paper and packed in boxes, it will keep as long as six or seven months, provided it be stored in a dry, ventilated place. If it is stored in a damp cellar, it will not last at all. The macaroni here involved was packed in boxes and stowed in the hold of a vessel, which was flooded with water to the extent that some of the boxes were dripping wet when discharged and all of them were exposed to damp and moisture for some 40 days before arrival. Consid-ering the nature of the merchandise and the results which would naturally follow a wetting or exposure to moisture in a damp, badly ventilated hold, it was certainly to be expected that some considerable portion, if not all, of the macaroni in the boxes so exposed would be absolutely ruined.

It will be observed from the foregoing description that macaroni if not properly wrapped and stored will sour and spoil in three or four weeks, whereas if properly wrapped in paper and packed in boxes it will keep as long as six or seven months, provided it be stored in a dry, ventilated place. If stored in a damp cellar it will not last at all. Nevertheless this article as a type or class of com-modities was held by the board in the Fried & Son case, supra, not to be a "perishable article" within the provision now in question, and the implied concession to the same effect in the Pastene case, supra, was adopted as the basis of the court's decision therein. In neither case was it suggested that the classification of macaroni in

this respect would depend in each case upon the particular importation then in question, but in both cases the type or class is with more or less directness cited as controlling.

In this view we conclude that Reggiano cheese as a type of commodity is not a perishable article within the meaning of paragraph X, supra, and that the present importation belonged to this type and therefore was not within the requirements of the paragraph in question. This being the case the importers were not barred from their remedy by protest because of their failure to comply with the special requirements aforesaid, and their protest should have been sustained.

The decision of the board is therefore reversed, and the case is remanded for determination consistently herewith.

*Reversed.*

### CONCURRING OPINION.

BARBER, Judge: I have such grave doubts as to the soundness of the conclusion in this case that while not expressly dissenting therefrom, I deem it my duty to call attention to some of the things upon which my doubts rest.

In addition to what is said about the condition of the cheese in the court's opinion, it also appears of record that the reason why the cheese decayed in transit was because at the time of exportation it was not mature or ripe enough to withstand the heat and other ordinary conditions incident to its passage through the Tropics to the port of importation. One of the importers testified that the cheese was not properly shipped because "it was too young, and too green; could not stand the trip, could not stand passing the Tropics in that condition," and that "when seasoned and properly shipped it is not perishable"; while another witness, also connected with the importers, said in substance that when any such cheese was shipped too young it was liable to spoil; that the reason it did spoil was because it was so shipped and that if it had been well seasoned, the heat would not have affected it. The importers were aware of its condition immediately upon the docking of the ship, which was in the hot weather of July, on the fifth day of which they began to unload it. Not until July 10 did they undertake to remove it from the dock to their warehouse and in the warehouse (and whether this was refrigerated or not does not appear), they spent three or four weeks in sorting the cheese. It occurs to me, as it did to some members of the board before whom the evidence was taken, that this delay contributed a good deal to the rapid decay of the merchandise.

In United States v. Shallus (2 Ct. Cust. Appls., 332; T. D. 32074), at page 333 this court said in substance that the destruction or loss which occurred to merchandise after the same entered the lines of

the customs district would not exempt the portion so destroyed from the payment of customs duties, and I doubt if it can be said here that the quantity of destroyed cheese that was finally ascertained a month or so after importation under the conditions of record here did not include a substantial amount that had become worthless after it crossed the customs line; nor do I see how the importer can be said to have maintained the burden cast upon him by his protest by showing the quantity destroyed so long after importation. I think it was his duty to show before in any event he could be allowed to recover, the loss that had occurred at the time the cargo came within the customs jurisdiction. I am quite inclined to believe that the rule established by this court in Houlder *v.* United States (4 Ct. Cust. Appls., 247; T. D. 33480), Lauricella *v.* United States (4 Ct. Cust. Appls., 253; T. D. 33482), and in United States *v.* Moscahlades Bros. (9 Ct. Cust. Appls., 46; T. D. 37904), controls this case against the importers.

While paragraph X clearly regards fruit as a perishable article, it also indicates that such commodities as are subject to the condemnation of health officers are likewise so regarded. Generally speaking this would include but would not necessarily be limited to various food products besides fruit, the existence of which in a decayed condition is a menace to the public health either because of offensive, obnoxious and unhealthful odors arising therefrom or because in such decayed condition it was unsuitable for any commercial purpose and its continued existence dangerous to the public.

It must be remembered that at the time the case of Lawder *v.* Stone was decided there were no such statutory provisions for the relief of importers as are now found in section 3 of paragraph X. We said in Houlder *v.* United States, supra, that in the cases coming within the ancestor of the provisions of paragraph X the remedy was exclusive and I question if uniformity of customs administration is not promoted by adhering to that view. Obviously this cheese spoiled because it possessed within itself when subjected to the normal conditions that might be expected to attend its transportation, unlading, etc., qualities that rendered it liable to decay. If not so, it would not have decayed. No claim is made that ripe cheeses of this kind must be shipped in refrigerated vessels, and the suggestion that this shipment was not hardly bears upon the issue as it seems to me. The cited definitions of "perishable" readily apply to the merchandise here. The importer or his witnesses regarded it as perishable and it has perished. To say that a commodity is not perishable because other shipments of the same name but in a different condition and one that prevents decay are not perishable, seems to me in a measure to beg the question. I doubt if the fact that nonperishable cheese of this name has been admitted

to bonded warehouse is either controlling or important. It is true that section 2962 of Revised Statutes excepts from warehouse privileges perishable articles. It is also true that section 2975 provides that all merchandise of a perishable nature deposited in public or private bonded warehouse shall be sold forthwith.

On the whole I query if it is not safer to adopt the view that whether or not an article is perishable within the meaning of the statute must be determined upon the facts of each particular case, but my purpose is sufficiently accomplished by calling attention to the foregoing considerations without expressly dissenting from the conclusion of the court.

If the rule of the opinion does not come back to plague us and promotes uniformity of administrative practice, this case is well disposed of. If otherwise, "Thou canst not say I did it."