(C. D. 679)

UNDERWRITERS SALVAGE Co. v. UNITED STATES

United States Customs Court, Third Division

(Decided September 2, 1942)

*Philip Stein* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of manila rope was damaged prior to importation due to the sinking of the importing vessel in the Bay of San Francisco. Entry was made by appraisement and the appraisement entry in evidence shows that 60 coils were assessed with duty at the rate of 2 cents a pound and 15 per centum ad valorem, the rate applicable to such rope if under $\frac{3}{4}$ of 1 inch in diameter under the provisions of paragraph 1005 of the Tariff Act of 1930. It further shows that 8 coils were assessed at 2 cents a pound under the same paragraph. The value of the 60 coils is stated on the appraisement entry to be $170 and the value of the 8 coils $82.

In assessing the ad valorem rate the collector made an allowance of 50 per centum in the value of the merchandise because of the damage. An allowance of 8.51 + per centum was also made in the weight due to excessive moisture.

The plaintiff does not dispute the correctness of the assessment insofar as the ad valorem rate is concerned, but claims that a like allowance of 50 per centum should have been made in assessing the specific rate of 2 cents a pound. This claim is based on the theory that the 50 per centum damage amounted to a nonimportation. It was agreed at the hearing that the extent of the damage to the rope was 50 per centum of its original value.

The Government examiner of this merchandise at the port of entry testified on behalf of the plaintiff. He stated that he based his refusal to make an allowance in the amount of specific duty on a ruling of the Treasury Department published in T. D. 49654. That ruling is found in Vol. 74, Treas. Dec. at p. 36, and is in the following language:

*To Collectors of Customs and Others Concerned:*

At a conference of customs officers held in Washington, D. C., in February 1930, the question arose as to the propriety of making an allowance in weight equal to the depreciation in value of imported burlap in bales dutiable at a specific rate of duty in cases in which the burlap had been damaged prior to importation.

In T. D. 45888–44, the Bureau expressed the opinion that the depreciation in value found by the appraiser rather than the actual damage to the burlap should be adopted as the basis of allowance, that is, if the depreciation in value is found to be 25 percent, duties should be taken only upon 75 percent of the weight, the balance to be considered as a nonimportation.

151

The question of a damage allowance for specifically dutiable goods has been reexamined by the Bureau and the conclusion has been reached that the opinion expressed in T. D. 45888–44 is erroneous. In the future, allowance in weight, quantity, or measure for all merchandise subject to a specific rate of duty which has been damaged or has deteriorated prior to importation may be made only when the damaged or deteriorated portion of the merchandise is found to be entirely without commercial value and can be segregated from the remainder of the shipment, in which event the damaged or deteriorated portion shall be treated as a nonimportation. Particular attention is directed to the provisions of article 816 of the Customs Regulations of 1937, which shall be applicable to such damaged or deteriorated merchandise.

As this ruling may result in the assessment of a larger amount of duty on such merchandise than that heretofore assessed under a uniform practice, the instructions contained in this ruling should be applied to such merchandise only when entered for consumption or withdrawn from warehouse for consumption after thirty days following the publication of this ruling in the weekly TREASURY DECISIONS. The instructions contained in T. D. 45888–44 are hereby revoked.

JAMES H. MOYLE,
*Commissioner of Customs.*

It is contended by the plaintiff in its brief that this ruling is not based upon any decision of this court but merely changes the practice in the method of allowances for damage insofar as specific rates are concerned. T. D. 45888 (62 Treas. Dec. 201), referred to in the ruling above set forth, reported recommendations made at a conference of collectors of customs and other officers. One of the recommendations made was that in certain cases of damage and entry by appraisement the depreciation in value found by the appraiser rather than the actual damage should be adopted as the basis for allowance in specific duty goods. Plaintiff argues that this change of practice in the manner of making allowance for damage when applying specific rates does not have the effect of law and therefore there is no reason why the specific rate should not have been assessed upon the same basis, viz, 50 per centum damage, as the ad valorem rate. It is claimed that the specific rate should apply to only 50 per centum of the total weight, or, in the alternative, 50 per centum of the specific rate should apply to the total net dutiable weight of the merchandise.

In support of this claim plaintiff argues that as duty upon imported merchandise is fixed upon the value and quantities of such merchandise and in their relation to the competitive merchandise produced in the United States which the tariff act seeks to protect, Congress could not have intended to fix a rate of 2 cents a pound on damaged manila rope. This contention fails to take into account the decisions of this court and the Court of Customs Appeals (now the Court of Customs and Patent Appeals) which held that certain wheat and rice although damaged nevertheless were dutiable as wheat and rice respectively. In the case of *Schade* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002, wheat which had been injuriously affected by frost so that it was inferior in quality and suitable only for animal

feed was held to be wheat. In *Atwood-Stone* v. *United States*, idem 472, T. D. 35004, wheat which had been stored in a damp condition, had become heated and fermented, and thereafter subjected to a process of dry heating, was held to be wheat. Cleaned rice which had been damaged by steam and water was held to be cleaned rice for customs purposes in *Bush* v. *United States*, 12 Ct. Cust. Appls. 22, T. D. 39894. It is true that in those cases the question was the proper tariff classification of the commodities involved; nevertheless the specific rate of duty was assessed upon the merchandise in spite of the fact that it was damaged.

In the case before us there is nothing to show that the merchandise has lost its identity as rope, but only that its value has depreciated.

The customs regulations applicable to damaged merchandise are found in article 816 of the Customs Regulations of 1937, and provide as follows:

Art. 816. Articles damaged and worthless at the time of importation.—When a shipment of merchandise, whether perishable or nonperishable, or any portion thereof which shall have been segregated from the remainder of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage or deterioration and is so reported to the collector in the appraisement return, an allowance in duties on such merchandise on the ground of nonimportation should be made in the liquidation of the entry.

The report of the appraiser, in evidence except as to any conclusions contained therein, states as a fact that "it was not possible to segregate the damaged portion so as to term it as being entirely without commercial value by reason of the damage to the coils." In view of this statement the court is of the opinion that the damaged portion cannot be treated as a nonimportation as claimed. In this connection the language of the court in the case of *United States* v. *Pastene & Co.*, 3 Ct. Cust. Appls. 164, at p. 166, T. D. 32458, is applicable. There the court had before it a quantity of macaroni which had been damaged by sea water on the voyage of importation. Judge Smith, in delivering the opinion of the court, said:

* * *. If the merchandise came within the customs jurisdiction damaged only, that is to say injured in its quality, although still retaining its identity and characteristic nature, then it seems clear that an importation of the goods can not be successfully denied. On the other hand, if the goods, consequent upon the wetting received, became decomposed and practically worthless as merchandise prior to their arrival within the limits of the port, it can not be said that they were imported into the United States within the meaning of the tariff laws, particularly as Congress seems to have expressly recognized in the second proviso to the subsection that "total destruction" may result in a "nonimportation in whole or in part."

An article is damaged when its value, its usefulness, or its efficiency is only impaired. It is destroyed when its value, usefulness, and that which makes it what it is are completely lost. * * *.

The rope here involved, so far as the record shows, has been "injured in its quality, although still retaining its identity and characteristic nature," and under the above holding constitutes an importation.

We therefore find that the action of the collector of customs in assessing the specific duty of 2 cents a pound upon the weigher's reported net weight of 7,013 pounds with an allowance of 8.51+ per centum for excessive moisture, or a net dutiable dry weight of 6,416 pounds, as shown on the report of the weigher in evidence, was in accordance with the law.

Judgment will be rendered overruling plaintiff's claim.