(C. D. 246)

CONSOLIDATED PRODUCE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 2, 1939)

*Harper & Harper* (*Walter I. Carpeniti* and *Abraham Gottfried* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel G. McGrath*, special attorneys, and *Alfred A. Taylor, Jr.*, junior attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a rehearing of a suit against the United States, arising at the port of Los Angeles. The plaintiff protested against the action of the collector of customs in refusing to grant an allowance in duties under section 506 (2) of the Tariff Act of 1930 on decayed tomatoes which were condemned by the health authorities within 10 days after landing and were destroyed. The shipment, consisting of 213,567 pounds of tomatoes, was imported on the vessel *Siskiyou* on April 6, 1933. The entry is dated April 7, 1933. An examination of the entry shows that an allowance for 4,997 pounds of condemned tomatoes was made in liquidation under section 506 (2). The plaintiff claims in his protest that an allowance should have been made for an additional 1,133 pounds of tomatoes under section 506 (2) and articles 806 and 807 of the Customs Regulations of 1931.

This case was considered by the court, along with several other cases, in *Consolidated Produce Co. et al.* v. *United States*, T. D. 47971, and the issue was decided adversely to the plaintiff's contention on the ground that the evidence failed to show that the importer had complied with the mandatory regulations of the Secretary of the Treasury. Counsel for the plaintiff, in his application for rehearing, asserted that the importer had complied with the customs regulations and that the failure of the inspectors to identify the condemned merchandise resulted from the lack of sufficient employees in the collector's office.

The plaintiff limits the claim in this case to two lots of tomatoes condemned by the health authorities, one consisting of 346 pounds condemned at the place of business of the importer, the Consolidated Produce Co., and the other, consisting of 431 pounds, condemned at

the place of business of the Sun Produce Co. There appears to be another lot of 356 pounds which was condemned by the health authorities but the plaintiff introduced no evidence relating thereto. It is explained by counsel for the defendant in the record that the notice of condemnation for that lot was not filed within 5 days after condemnation, and, under the provisions of the statute, no allowance therefor can be made. The pertinent parts of section 506 read as follows:

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

   \*       \*       \*       \*       \*       \*       \*

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

The regulations of the Secretary of the Treasury regarding allowances in duty for perishable merchandise condemned by the health authorities within 10 days after landing are contained in article 807 of the Customs Regulations of 1931, reading as follows:

Art. 807. Notice—Investigation—Allowances:

(a) Upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers, who shall make a report to the collector in writing as to the identity and quantity of the fruit or perishable articles condemned and whether or not the same were condemned within 10 days after landing.

(b) If it appears from the evidence submitted by the importer and the report of the investigating officers that the merchandise was condemned within 10 days after the landing thereof, and a timely notice was filed, allowance for the articles so condemned may be made in the liquidation of the entry.

At the original trial plaintiff introduced the testimony of Mr. Frank W. Schoeppe, a liquidator in the office of the collector of customs. He testified that there was one lot of 356 pounds, condemned on April 11, 1933, which was not allowed; that there were two other condemnation slips attached to the papers in the case which were not allowed, one dated April 14, 1933, for 346 pounds and the other, dated April 10, for 431 pounds of tomatoes.

The second witness for the plaintiff was Mr. Ernest A. Morey, superintendent of Consolidated Produce Co., the importer. When shown the invoice and asked if he was familiar with the importation in this case, he stated that the papers "all looked regular" but he had no way of identifying them; when shown his own affidavit, which was attached to the papers in the case, he stated that it did not refresh his recollection as he followed the same procedure in every shipment. He testified that all of the shipments to his firm come under his

personal supervision, and, when shown a condemnation slip covering 346 pounds of tomatoes, he stated that the tomatoes were covered by the instant shipment and the lot was condemned on his premises by the health authorities; that the condemned tomatoes were sorted out of the shipment under his supervision; that he secured a slip from the health department; that the condemned tomatoes were actually destroyed; that the garbage people call at his place of business every afternoon and the condemned tomatoes are hauled away by them.

The plaintiff offered the condemnation certificate of the health department, dated April 14, 1933, and a letter from a customs broker, dated April 17, 1933, directed to the collector of customs and enclosing the condemnation ticket and calling attention to the fact that the ticket constituted a partial condemnation of the tomatoes received on the S. S. *Siskiyou*, lot #1144, entry number 6735, at Consolidated Produce Co., 750 Market Court. This letter bears a stamp showing that it was received at the customhouse on April 17, 1933. The papers were received in evidence and marked "Exhibit 1."

When asked if he could recall whether any of the merchandise from the shipment was distributed to the Sun Produce Co., the witness answered "no." Upon being recalled later, however, his attention was directed to a health department certificate in the papers showing that 431 pounds of tomatoes were condemned at the Sun Produce Co., the slip containing the notations "lot 1144" and "D. E. 6735" and a statement relating to the merchandise and signed "Consolidated Produce Co., E. A. Morey," he testified that he supplied the Sun Produce Co. with the entry number and the house lot number and that the memorandum on the back of the slip was in his own handwriting and that he could identify the tomatoes as coming from the particular shipment from the health certificate. He testified further that he attaches house lot numbers to every shipment of tomatoes received by the Consolidated Produce Co. and that he keeps every shipment separate.

Mr. N. Ito of the Sun Produce Co. was called by plaintiff and testified at some length regarding sorting and condemnation of the 431 pounds of tomatoes by the health authorities before Mr. Morey was recalled to testify. A condemnation slip covering 431 pounds of tomatoes, with an accompanying letter to the collector was marked "Collective Exhibit 2, for Identification." Upon motion of counsel for the defendant, his testimony was stricken out by the judge presiding at the trial but after Mr. Morey testified upon being recalled, Mr. Ito was recalled. The papers marked "Exhibit 2, for Identification" were shown him and he testified that he recognized the writing in lead pencil on the back of the condemnation slip as his; that he received the information concerning the entry number and the lot number of the shipment from the Consolidated Produce Co.; that the tomatoes belong to lot number 1144; that when he received the ship-

ment he got in touch with the Consolidated Produce Co. to find out the dutiable entry number; that he kept the tomatoes separate from any other shipment; that the rotten tomatoes were separated from the good ones in his presence; that the condemned tomatoes were put in the garbage can and were taken away by the garbage collectors; that he received the condemnation slip from the city health department. The plaintiff then moved that Exhibit 2 for Identification be received in evidence and marked "Exhibit 2." On cross-examination the witness testified that the tomatoes received from the Consolidated Produce Co. were sorted the next morning after they were received and the inspector from the health department gave him the certificate after his inspection; that about half an hour later he wrote a memorandum in lead pencil on the back of the certificate.

Counsel for the defendant objected to the receipt of Exhibit 2 for Identification, on the ground that it was a self-serving declaration and that the witness might have written any number on it. The objection was overruled by the judge presiding at the trial, but subsequently the witness testified that the memorandum in lead pencil on the back of the certificate was written under his instructions and in his presence by his boy and the judge presiding at the trial changed his ruling on the admission of Exhibit 2 for Identification, and rejected the same, so the record did not show that the provisions of the statute had been met. Counsel for defendant did not make a motion to strike out the witness' testimony taken the second time, so it remains a part of the record.

On this meager record the court overruled the protest. On the rehearing, however, the papers marked "Exhibit 2, for Identification" in the first hearing were admitted in evidence by consent and were marked "Exhibit 2." The notice of condemnation, which the statute prescribes must be filed within 5 days after condemnation, in that exhibit is dated April 11, 1933, and the official stamp thereon shows that it was filed in the customhouse on the same day. The notice is signed "Guy C. Barham Company" by its attorney, whose name we are unable to decipher. The heading on the paper upon which the notice is written shows that Guy C. Barham Co. is a customhouse broker. The notice contains the following:

> D. E. #6735 of 4/7/33
> Consolidated Produce Co.
> 750 Market Court
> Ex SS "Siskiyou" Lot #1144

We are attaching hereto two (2) Condemnation Tickets and Affidavit covering the Condemnation on the above described entry as follows:

4/10/33—condemning 431 pounds of tomatoes at Sun Produce Co.

4/10/33—condemning 185 pounds of tomatoes at Consolidated Produce Co.

The two attached Condemnation Tickets constitute partial condemnation on this entry. When these tickets have served your purpose will you please return same to our office.

The condemnation ticket relating to the 431 pounds of tomatoes condemned at the Sun Produce Co., referred to in the notice, reads as follows:

Department of Health
City of Los Angeles                Los Angeles, Calif., Apr. 10, 1933.
Sun Produce Co.

You are hereby notified that 431# net tomatoes in your possession are deteriorating and are unfit for human consumption and must be destroyed ———— within ————

Failure to comply with this notice will subject you to the penalties provided for violation of Ordinance No. 68600.

C. W. Decker, M. D.,
*Health Officer.*

(Signed)    A. J. Schultz,
*Fruit Inspector.*

Three notations in handwriting appear on the back of this notice, reading as follows:

Apr. 10, 1933
1st sorting on 853 lugs
Dumped 431 lbs. net
Lot 1144
D. E. 6735
Sun Produce Company
4/10 Quantity O K
S. C. Wilson
4/10. We certify that the information
contained in this condemnation ticket
is true and correct.
Consolidated Produce Co.
(signed) E. A. Morey

Mr. S. C. Wilson, who was a customs inspector at the time of the importation herein involved and whose name appears on the back of the condemnation certificate in Exhibit 2 under the notation "Quantity O K," was called by the plaintiff and testified that he made an inspection at the Sun Produce Co. in regard to the tomatoes covered by the condemnation ticket in Exhibit 2 on April 10; that a garbage can containing 431 pounds of tomatoes was shown him and he was told that they were a part of the merchandise in consumption entry 6735; that as he knew that that entry covered an importation by the Consolidated Produce Co. he could not identify the 431 pounds of decayed tomatoes as coming from the shipment; that after April 11 he did not make a personal inspection of any of the tomatoes described in Exhibit 2 because they were not available for inspection; that the condemnation ticket in Exhibit 2 was presented to him on the premises of the Sun Produce Co.; that he did not make any request of the importer on April 11 (the date of the notice to the collector in Exhibit 2) or thereafter to inspect the tomatoes covered by the condemnation ticket in Exhibit 2. He testified further that he called on the importer

on April 14 or 15, 1933, to inspect the tomatoes described in Exhibit 1 and the importer stated that they had already been disposed of; that after April 17 (which is the date that Exhibit 1 was filed in the customhouse) he did not make any personal inspection of the tomatoes described therein; that he was alone when he called to make the inspections; that the condemnation ticket in Exhibit 1 was presented to him on the premises of the importer; that he had to visit a great number of wholesale houses in the markets of the city of Los Angeles each day; that the longest time he could be present at any one place during the week, with the exception of Saturday or Sunday, would be from 15 minutes to possibly an hour; that usually he made several calls during the day; that he observed the tomatoes covered by entry 6735 being sorted; that he was not present during the entire time the tomatoes covered by the condemnation tickets in Exhibits 1 and 2 were being sorted; that if the importer had been able to produce the 346 pounds of tomatoes covered by the condemnation slip in Exhibit 1 he would have reported that the identity was established; that the condemned tomatoes had been destroyed some time subsequent to condemnation but prior to the witness' arrival within 24 hours of the date of condemnation and he had no way of determining the quantity; that he did not inspect any of the tomatoes after the claims were lodged with the collector's office and his examination was made in anticipation of a request for investigation.

Frank W. Schoeppe, the liquidator who testified at the first trial, was called as a witness by the plaintiff at the trial on rehearing. He testified that the notices of condemnation filed by the plaintiff (Exhibits 1 and 2) came to his attention and on May 8, 1933, he issued a request for a report from the inspectors on the damaged tomatoes. The witness identified a paper as his request for examination of the condemned tomatoes and it was admitted in evidence and marked "Exhibit 3". It reads as follows:

MAY 8, 1933,

INSPECTOR IN CHARGE,                         Dutiable Entry 6735.
        *Los Angeles, Calif.*

SIR: Herewith notices of perishable merchandise condemned under Section 506 (2) of the Tariff Act.

Two inspectors should investigate and make a report as to the identity and quantity of merchandise condemned.

At the bottom of this document appears the inspector's report, reading as follows:

*5353 lbs. net tomatoes condemned. Quantity and identity established. 777# tomatoes, identity not established.

Condemned quantity disposed of by dumping into garbage truck under Customs Supervision.

S. C. WILSON, *Inspector.*

E. S. GLAZER, *Inspector.*

* ticket for 356# included.

On the back of this document appears the following in handwriting:

346#  Identity not established a/c disposed of before quantity could be checked and weighed.

431#  Original importer did not advise inspector of sale to buyer at whose premises this dumpage had accumulated. Identity could not be established. Other tomatoes on premises and in process of sorting at time this dumpage was accumulated.

The witness testified further that the action of the collector with relation to condemned vegetables was governed by the inspector's reports and the collector would take no action independently of the inspector's reports; that he did not allow for the 777 pounds of condemned tomatoes for the reason that the regulations required that the identity be established to the satisfaction of two inspectors, and, without that, the collector's office would not allow any deduction; that he received notice of the condemnation 3 days after the condemnation; that he sent the inspector a request for a report on May 8, 1933; that the importer had no notice that his claims were disallowed until the notice of liquidation was posted in the customhouse, which was on September 21, 1933; that the collector did not give any consideration to the affidavit which the importer filed with Exhibit 1 but it was referred to the inspectors.

The next witness called by the plaintiff was Mr. Ernest S. Glazer, the other inspector who signed the inspector's report. He testified that he was one of the inspectors detailed to make an investigation and report in response to the collector's written order; that he signed the report as a result of an examination of documents and information gathered originally by inspector Wilson but he did not inspect the tomatoes personally; that he assigned Mr. Wilson to make a round of the markets as a routine matter to check up condemned merchandise and the ticket relating to 346 pounds of condemned tomatoes, and other tickets gathered on that day, were filed in the office for future reference; that Mr. Wilson usually collected the tickets within a short period after the health officer's action. On cross-examination he testified that he instructed Mr. Wilson to make an inspection when the condemnation tickets were turned over to him and Mr. Wilson's memorandum on the back of the condemnation ticket covering 346 pounds of tomatoes reads "Not destroyed under customs supervision. No refund"; that subsequent to May 8, 1933, when the collector issued Exhibit 3, he refreshed his memory by referring to the condemnation ticket and the entry, and, in collaboration with Mr. Wilson, reviewed the note on the back of the condemnation ticket and made a report on Exhibit 3, including the notations on the back of that report; that the same procedure occurred in connection with the condemnation ticket covering 431 pounds of tomatoes; that when

an importer advises the inspector before condemnation that he had sold a part of a shipment, the inspector makes an investigation on the buyer's premises. On redirect examination the witness testified that neither he nor Mr. Wilson made any attempt to examine the tomatoes described in Exhibit 3 after Aprill 11 or April 17 (which are the dates of the notices of condemnation) or after May 8, 1933, which is the date Exhibit 3 was issued.

To summarize the testimony, it is clear that a lot of 346 pounds of tomatoes from the shipment covered by this protest was condemned by the Department of Health of the City of Los Angeles on the importer's premises and that a lot of 431 pounds of tomatoes from the same shipment was condemned on the premises of the Sun Produce Co., a customer of the importing company, and that the condemned tomatoes were disposed of by being taken away by the garbage collectors; that the condemnation in each case occurred within 10 days after landing and the condemnation certificates together with the notices of the condemnations were filed in the office of the collector within 5 days after the condemnations.

The notices attached to Exhibits 1 and 2 give the entry number, the date of entry, the name and address of the importer, the name of the company on whose premises the goods were condemned, the name of the vessel in which the merchandise was imported, the lot number assigned by the importer, and the date of condemnation. It is apparent, therefore, that the importers did everything required of them by the statute and the regulations.

The record shows further that one customs inspector visited the places where the tomatoes were being sorted during the process of sorting; that he called at the Consolidated Produce Co. either on the same day or the day after the 346 pounds of tomatoes were condemned but found that they had been disposed of already, so he wrote on the back of the condemnation certificate the words "not destroyed under customs supervision, no refund"; that he called at the Sun Produce Co. on the day the 431 pounds of tomatoes were condemned and weighed the condemned tomatoes but as he had not previously been informed that the importer had sold part of the shipment to the Sun Produce Co. he reported that he could not identify the condemned tomatoes.

The inspector's report at the bottom of Exhibit 3 bears no date but it must have been made after May 8, 1933, which is the date the collector issued the instructions to investigate. Exhibit 2, which evidently accompanied that letter, shows, in the notice to the collector that 431 pounds of tomatoes out of the shipment to the Consolidated Produce Co., entry 6735, S. S. *Siskiyou*, lot 1144, were condemned at the Sun Produce Co. on April 10, 1933. The inspectors must have had that information before them when they made their

report at the bottom of Exhibit 3, and it appears to be sufficient to inform them that the condemned tomatoes which the inspector examined at the Sun Produce Co. were out of the instant shipment.

Article 807 (a) of the Customs Regulations provides that "upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers" but the collector waited over 3 weeks before directing that an investigation be made, that is, he issued the instructions on May 8, 1933, whereas the notices of condemnation were filed in the customhouse on April 11 and April 17, 1933. Manifestly, the collector did not order an investigation "upon receipt of" the notices of condemnation.

It is obvious that decayed tomatoes could not have been retained on the premises for 3 weeks without becoming a menace to the health of the community. However, the inspector who called to identify the dumpage testified that he made his inspection at the time the tomatoes were being sorted in anticipation of a request by the collector for an examination and report. Such practice does not follow the sequence contemplated by the wording of article 807 (a) of the regulations but it appears to be the only logical system of conducting an investigation in such case if the regulation contemplates that the customs officers should examine and weigh the condemned merchandise. Obviously such dumpage could not be retained on the importer's premises for even 5 days, the time which the statute gives the importer to notify the collector of the condemnation, and it is manifest that the statute does not contemplate that the investigation of the customs officers should be limited to weighing and witnessing the disposal of the dumpage.

The inspector's report at the bottom of Exhibit 3 is signed by two inspectors. It appears from the record, however, that one inspector made all the examinations of the merchandise, for it was his duty to cover all of the Los Angeles vegetable market at that time, while the second inspector confined his examination to an inspection of the official papers and a discussion of the case with the other inspector.

Article 807 of the regulations appears to be limited to the duties of the customs officers and contains no requirements to be met by importers. Subsection (a) directs the collector to cause an investigation to be made by two customs officers, who are to make a report in writing, and subsection (b) authorizes the collector to make an allowance in duty if the evidence submitted by the importer and the report of the investigating officers shows that the merchandise was condemned within 10 days after landing and that a timely notice thereof was filed. The statement of witness Schoeppe that "the regulations require that before condemnation allowance be given that the identity

must be established to the satisfaction of two inspectors" does not appear in article 807.

The record shows that an affidavit of an officer of the importing company was filed with the collector at the time the condemnation certificates and the notices of condemnation were filed, but Mr. Schoeppe testified that the only evidence that would be considered in liquidation was the report by the inspectors as to the identity and quantity of the merchandise condemned. However, article 807 (*b*) of the regulations indicates that the collector should consider *the evidence submitted by the importer* as well as the report of the investigating officers.

In the case of *Lauricella et al* v. *United States*, 4 Ct. Cust. Appls. 253, T. D. 33482, the court, in construing a statute relating to allowance for merchandise condemned by the health authorities similar to that there under consideration, treated the board of health certificates as "proof" or evidence and held that all the statute required the importers to file within the required statutory time after condemnation by the health authorities was the notice of condemnation. The collector evidently erred in this case in not considering the proof or evidence submitted in the importer's behalf.

The facts in this case are similar to those in the case of *Farmer's Produce Co. et al.* v. *United States*, T. D. 49495. In this case, as in that, the plaintiff proved that certain quantities of vegetables were condemned by the health authorities within 10 days after landing, and, within 5 days after condemnation, the condemnation certificates together with notices thereof, giving the invoice description, the location of the merchandise, and the name of the vehicle in which the merchandise was imported, were filed with the collector. Weeks after the merchandise was condemned and destroyed the collector directed that two inspectors investigate and thereafter they examined the papers that were on file in the office and reported that the condemned merchandise could not be identified.

In the instant case the plaintiff introduced in evidence, as Exhibits 4 to 8, certain mimeographed copies of instructions issued by the collector of customs at Los Angeles, directed to "Customs Officers, Customs Brokers and others concerned," setting forth conditions under which fresh fruits and vegetables would be examined when claims were made under section 506, and one carbon copy of a letter from the Acting Commissioner of Customs directed to the collector of customs. The mimeographed letters are similar to those introduced in the case of *Farmer's Produce Co. et al.* v. *United States, supra,* concerning which the court said in its opinion:

There was introduced in evidence (Exhibits 2 to 6) certain mimeographed copies of instructions issued by the collector of customs purporting to prohibit customs supervision of the sorting of perishable merchandise after removal from

the custody of the importer, providing that, where more than one shipment was on the floor of the importers' place of business, each shipment must be held in a separate place, that an identification card must be attached to each lot, that allowance shall be made on the first sorting only, and that no previously sorted lot or lots shall be present on the same premises where the sorting of any shipment is taking place. These exhibits do not bear the approval of the Secretary of the Treasury and were not promulgated by him. Therefore, they are not regulations which have the force of law and bind this court. Citing *Franklin Sugar Refining Co.* v. *United States*, T. D. 29688, 17 Treas. Dec. 311; *United States* v. Boston *Paper Board Co.*, Reap. Dec. 3469, 66 Treas. Dec. 1324, and T. D. 49047, 1 (b).

Exhibit 7, which is the letter from the Acting Commissioner of Customs above referred to, directs the collector to confine allowances for condemned merchandise to goods segregated in the first sorting. That letter is not applicable in this case in any event as it does not appear that the sorting of the tomatoes was not the first sorting. In fact, the letter is not a regulation because it does not appear to have been published as such and it does not bear the approval of the Secretary of the Treasury.

In the case of *Farmer's Produce Co. et al.* v. *United States, supra*, the court held that where the record showed that tomatoes out of the shipments had been condemned within 10 days after landing by the health authorities and notices of condemnation were filed with the collector within 5 days after condemnation, that is, where the importers had done everything required of them by section 506 (2) of the statute, and proof was offered in court showing that the goods were condemned within the statutory time and were destroyed, the importers should be granted relief from the payment of duty on the worthless merchandise. Other cases where the importers have been granted relief where the customs officers failed to make a favorable report on the condemned merchandise are *Calavo Growers of California* v. *United States*, T. D. 46687 and *Scaramelli Co.* v. *United States*, Abstract 38109.

We find that 346 pounds of tomatoes out of the shipment herein involved were condemned by the health authorities at the importer's premises and 431 pounds out of the same shipment were condemned at the premises of the Sun Produce Co.; that the tomatoes were condemned within 10 days after landing and were destroyed by being dumped in the garbage which was taken away by the garbage collectors; that the importers complied with the provisions of section 506 (2) by filing in the customhouse, within 5 days after condemnation, the notices of condemnation; and that the notices contained all the data required by the statute. We hold that the duty assessed on the two lots of tomatoes condemned, that is, on the 346 pounds and the 431 pounds above described, should be refunded, and to that extent the protest is sustained. Judgment will be entered accordingly.

264

As to the lot of 356 pounds of tomatoes, concerning which the plaintiff failed to file a notice of condemnation at the customhouse within 5 days after condemnation, the protest is overruled.