LAURICELLA *et al. v.* UNITED STATES (No. 1063).[1]

1. REARRANGING LANGUAGE IN A STATUTE.

It is a familiar principle of statutory construction that for the determination of legislative intent courts may assemble provisions of a statute in accord with that intent.

2. SUBSECTION 22, SECTION 28, TARIFF ACT OF 1909.

Nonimportation of a part of the cargo of lemons was claimed. The provision of the statute is that "proof" of destruction or nonimportation "shall be lodged with the collector of customs," etc. There is no limitation in the language of the statute of the kind of proof or otherwise save as to time when this proof may be made by the importer. The statute allows ten days to introduce such proof; to limit this to five, as is sought in the Treasury regulation, is in excess of statutory power.—Vandegrift *v.* United States (3 Ct. Cust. Appls., 198; T. D. 32470) distinguished.

United States Court of Customs Appeals, May 23, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7398 (T. D. 32881), (Abstract 30352 (T. D. 32905).

[Reversed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DEVRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns an importation of fruit at the port of New York, claimed to have suffered a shortage or nonimportation by reason of decay or rot, for which reason such part was condemned by the board of health at that port and destroyed. The claim is made under subsection 22 of section 28 of the tariff act of 1909, and overruled by the Board of General Appraisers.

---

[1] Reported in T. D. 33482 (24 Treas. Dec., 871).

That subsection reads:

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee. Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, wares or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided*, That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided further,* That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues, or whether by reason of total destruction there is a nonimportation in whole or in part. All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of such importers. Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector, of said port, notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, or if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided, proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon.

One of the questions involved is whether or not the power vested in the Secretary of the Treasury in said subsection to make specific regulations in the premises extends to the part thereof relating to condemnation by a board of health or other legally constituted authorities. We think that question is answered by a transposition of the provisions of subsection 22 accordingly as they are related by reason of subject matter.

It is a familiar principle of statutory construction that in the ascertainment of legislative intent courts may assemble provisions of a

statute to accord with that intent. When the context of a statute manifests, as in this case, provisions related according to subject matter and unrelated otherwise, though scattered in typographical arrangement, the application of the rule and the necessity therefor are apparent.

Words, phrases, and sentences may be transposed when necessary to give effect to all the words of a statute and to carry out the manifest intent.—Lewis's Sutherland Statutory Construction (sec. 386).

If a condition or qualifying clause has been misplaced, so that in the connection where it is inserted it is absurd or nonsensical, the court will apply it to its proper subject and give it effect if the statute affords the proper clues and it can be done in furtherance of its obvious intent.—Lewis's Sutherland Statutory Construction (sec. 410).

This statute embraces three separate and distinct matters. The first provides an allowance for "shortage or nonimportation" caused by decay, "destruction," or injury to fruit. The second provides an allowance for "damage," and permits, under prescribed circumstances, an "abandonment" to the Government. The third provides for an allowance where goods are "condemned by the health officers or other legally constituted authorities."

The provisions of the subsection clearly and unquestionably relating to these respective different matters are scattered indiscriminately through the subsection. It will be instructive, therefore, as stated, in the determination of the legislative intent to assemble those provisions relating to the particular subject matter. This appeal involves the subject matter of the third provision above stated, being a claim for an allowance on account of goods condemned by health officers. The provisions of subsection 22 relating to the subjects matter may be assembled and quoted as follows:

### (1) SHORTAGE OR NONIMPORTATION.

SEC. 22. No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. * * * Unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged as herein required, * * * proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee.

### (2) DAMAGE.

Nor shall any allowance be made for damage, but the importers may within ten days after such entry abandon to the United States all or any portion of goods, wares, or merchandise of every description included in any invoice and be relieved from

the payment of duties on the portion so abandoned: *Provided*, That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares, or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided further*, That section twenty-eight hundred and ninety-nine of the Revised Statutes, relating to the return of packages unopened for appraisement, shall in no wise prohibit the right of importers to make all needful examinations to determine whether the right to abandon accrues. * * * All merchandise abandoned to the Government by the importers shall be delivered by the importers thereof at such place within the port of arrival as the chief officer of customs may direct, and on the failure of the importers to comply with the direction of the collector or the chief officer of customs, as the case may be, the abandoned merchandise shall be disposed of by the customs authorities under such regulations as the Secretary of the Treasury may prescribe, at the expense of the importers.

### (3) CONDEMNATION.

Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector, of said port, notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. Upon receipt of said notice the collector, or person acting as collector, shall at once cause an investigation and a report to be made in writing by at least two customs officers touching the identity and quantity of fruit or perishable goods condemned, and * * * if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided, * * * no allowance shall be made in the liquidation of duties chargeable thereon.

The predication of two different subjects of the single phrase "no allowance shall be made in the liquidation of duties chargeable thereon" requires repetition of that phrase to preserve the congressional purpose in the arranged text in (1) and (3).

It will be observed, under this arrangement, that the words used in the last part of the subsection, as arranged in enactment, "unless proof to ascertain the shortage or nonimportation of fruit or perishable goods shall have been lodged *as herein required*," and the other provisions relating to proof concerning shortage or nonimportation are thereby given an apposite antecedent to the provisions relating to "proof" as to that subject matter appearing only earlier in the act as follows:

Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise.

That this was the view taken by the Treasury Department when the regulations in question were promulgated is shown by T. D. 30023 and as subsequently amended in T. D. 31699 and T. D. 32511. It will be noted, in passing, that these regulations of the Treasury Department are divided into three separate and dis-

tinct classes, according to subject matter, exactly as we have here-inbefore indicated the statute naturally divides itself as to subject matter.

In this view the question first raised by appellant aforesaid as to whether or not the authority therein granted the Secretary of the Treasury to make regulations in the application of this sub-section extended to that part thereof the subject of this appeal, to wit, the provisions relating to goods which have been con-demned by health officers or other legally constituted authorities, is easily solved. They are not grammatically or according to their expressly limited subject matter applicable to that portion of the subsection.

Moreover, while the kind or character of proof is left open in the provisions relating to shortage and nonimportation, in the provisions relating to condemnation the legislature has defined precisely certain proof that shall be submitted. The importer must serve a statutory notice within 24 hours after condemnation, all requirements of which are obtainable from public records and without an inspection of the merchandise. Thereupon the examination is made by two exam-iners to corroborate or controvert this notice. If the notice is not given, no right of recovery follows; if it is, no further requirement seems imposed upon the importer. He may, however, within the statutory 10 days offer proof in support of his claim if deemed neces-sary or advisable. United States v. Shallus (2 Ct. Cust. Appls., 332; T. D. 32074). The statute, it seems, in this case furnishes a complete code of necessary requirements and procedure; hence the absence of the necessity for any regulations by the Secretary of the Treasury. It furnishes a rule of statutory evidence similar to that of section 2921, Revised Statutes. United States v. Parks (77 Fed., 608); United States v. Shallus (2 Ct. Cust. Appls., 332; T. D. 32074).

The further fact that Congress has expressly granted the Secretary the power to make specific regulations as to the disposition of aban-doned merchandise argues that, wherever and as to every subject matter in the act upon which Congress wished to legislate, subject to such regulations, it did so expressly. Therefore such right and duty should be confined to those parts of the act only with which such provisions are immediately and expressly by subject matter associated.

It is appropriate to state in this connection that the contention is made upon behalf of the Government, and it was held in the decision by the board that these regulations were held to be reasonable by this court in Vandegrift v. United States (3 Ct. Cust. Appls., 198; T. D. 32470). This assumption overlooks the fact that the part of

the regulations there commented upon by the court was not that part applicable to this subject matter of the subsection "condemnation," but those applicable to another different and distinct subject matter thereof, "shortage and nonimportation." The part of the regulations here in question concern the subject matter of section 2 thereof, while the part of the regulations therein questioned concerned the subject matter of section 1 thereof.

The above regulations were promulgated October 4, 1909. On June 17, 1911 (T. D. 31699), an amendatory regulation was promulgated, which, in so far as here pertinent, required that where an importation was condemned by the board of health and destroyed "the importer shall file within 5 days, exclusive of Sundays and legal holidays, after such condemnation a certificate issued by the board of health, specifying such packages as were condemned and destroyed in each line or lot. * * * In the absence of the proof aforesaid that the fruit so condemned was actually destroyed no allowance therefor shall be made." On May 16, 1912 (T. D. 32511), the Secretary of the Treasury amended this requirement by extending the time within which said certificate of the board of health might be filed to 15 days.

The facts and circumstances of this case make it unnecessary to discuss or decide whether the aforesaid regulations, promulgated expressly under the authority of said subsection 22, if unauthorized as to fruit condemned, are nevertheless of vitality and force under the general power of the Secretary to promulgate regulations under section 251, Revised Statutes. In either case, in our opinion, the regulations as to this subject matter are beyond the statutory authorization and unreasonable.

The following facts are incontrovertibly established: Certain fruit imported was condemned at the port of original entry within 10 days after landing by health officers or other legally constituted authorities. The importers within 24 hours after such condemnation lodged with the collector notice thereof in writing, together with an invoice description and the quantity of the articles condemned, their location and the name of the vessel in which imported. Upon receipt of said notice the collector caused an investigation and a report to be made in writing by two customs officers touching the identity and quantity of fruit condemned. The customs officers reported that the condemnation had in each instance been made in accordance with the importers' notice. No allowance was made in liquidation for the duties paid on the condemned fruit.

These importations were made during the time that the amendatory regulation of June 17, 1911, was in full force and effect and before that of May 16, 1912, amendatory thereof, was promulgated.

The question for determination, in view of the stated reservations, is whether or not this regulation of the Secretary of the Treasury requiring a certificate of the board of health to be filed as a matter of proof within five days after condemnation was legal and valid, and whether or not the regulation requiring this certificate of an exclusive kind of proof upon behalf of the importers was legal and valid.

While it is well settled that the courts have uniformly discriminated between regulations promulgated by the Secretary of the Treasury under the general power to make such vested in him by section 251 of the Revised Statutes, and those such as these, vesting in him a special power to make regulations affecting a particular importation, we think the provisions of this regulation such that the distinction is not here controlling. The rule, as stated by this court in United States *v.* Morris European & American Express Co. (3 Ct. Cust. Appls., 146; T. D. 32386), is as follows:

Compliance with such regulations (those made under the general power, vested by sec. 251, R. S.) may be had after the acts of importation and entry. Compliance with such may be the subject of proof before the Board of General Appraisers. Where, however, an exemption from or reduced rate of duty is claimed under a specific provision of the statutes which, as in this case, is accorded under or subject to such regulations as to proof or otherwise that may be prescribed by the Secretary of the Treasury, it has uniformly been held that such regulations become a condition precedent to the right accorded by the statute and must be complied with at the time of entry, or as otherwise specifically directed by the statute granting the same.

We further stated in that case the rule applicable to this regulation:

While it is the established rule of law that where the right of exemption from, or to a reduced rate of, duty is by the Congress made subject to regulations to be prescribed therefor by the Secretary of the Treasury, these regulations nevertheless must be reasonable. The principle is that they must be regulative and not prohibitive. The right to import free of duty must not be destroyed or rendered inoperative by the prescribed regulations. United States *v.* Goodsell Co. (91 Fed., 519); Morrill *v.* Jones (106 U. S., 466); United States *v.* Dominici (78 Fed., 334).

The power of the Secretary of the Treasury under this general authority and under various grants of specific authority to make regulations affecting the character and kind of evidence that may be required by such regulations has frequently been the subject of decision by the courts. Such was the case in Morrill *v.* Jones (106 U. S., 466), decided by the Supreme Court. Therein the right of free entry of animals specially imported for breeding purposes was granted "upon proof thereof satisfactory to the Secretary of the Treasury, and under such regulations as he may prescribe." A regulation by the Secretary of the Treasury that satisfactory proof that the animals are of superior stock must be produced was held by the Supreme Court as invalid and beyond the statute.

It will be noted that in the Morris European & American Express Co. case, *supra*, the special statutory power to regulate the proof was vested in the Secretary of the Treasury and in this language:

But the free importation of such objects shall be subject to such *regulations as to proof* of antiquity as the Secretary of the Treasury may prescribe.

In this case the provision of the statute is, "proof" to ascertain such destruction or nonimportation, etc., "shall be lodged with the collector of customs," etc. In the case, *supra*, there was an express grant to the Secretary of the Treasury to regulate the proof. In this case there is an express grant to the importers of an unrestricted right to make "proof." There is no limitation in the language of the statute of the kind of proof or otherwise save as to time when this proof may by the importers be made. The Congress having prescribed one limitation and given an unrestricted right of "proof" to the importer, the legal assumption must be that the word carried with it its natural legal import. In this view it was a grant to the importers to introduce any legal proof recognized by the courts of law and within the judicially defined meaning of that term, provided it was done within the statutory period. The limitation of the time for the introduction of this proof by the regulation of the Secretary of the Treasury to 5 days was clearly beyond his statutory power. The statute gave the importers 10 days in which to introduce such proof and restricted that right to that period of time. The amendatory extension of this time by the Government to 15 days seems equally beyond the statute.

We are of the opinion that the statute gives the importer the legal right within 10 days to make such proof as is regarded such in a court of law and according to the legal limitations of that term, and that both the limitation of the time of filing the same and the limitation of the character of this proof as to a particular kind thereof is beyond the words of the statute and unreasonable.

While we have rested decision in this case upon the stated grounds, we do not wish to be understood thereby to hold that the statute makes it incumbent upon the importer in cases of condemnation to introduce any "proof" or do other than duly serve the statutory notice of condemnation upon the collector. The point was not made or urged that in that class of cases the notice of condemnation by the importer and the report of the two examiners satisfied the statutory requirements; and that the "proof" required by the statute is not referable to condemnation cases. That point is not necessary of decision and is not here decided. United States *v.* Shallus (2 Ct. Cust. Appls., 332; T. D. 32074); United States *v.* Park (77 Fed., 608).

The decision of the Board of General Appraisers is *reversed*.

NOTE.—The decision of the Board of General Appraisers, Abstract 30352 (T. D. 32905), likewise covered by this appeal, is *affirmed* by consent.