(C. D. 361)

PAN AMERICAN COMMERCIAL CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 24, 1940)

*Harper & Harper* (*Abraham Gottfried* and *Walter I. Carpeneti* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: In these suits filed by the importer against the United States the plaintiff seeks to recover duties assessed at the rate of 3 cents per pound under paragraph 772 of the Tariff Act of 1930 on certain fresh tomatoes which are claimed to have been condemned by the board of health and destroyed within 10 days after landing. The plaintiff claims that allowance should have been made in the duties assessed by virtue of the provisions of section 506 (2) of the Tariff Act of 1930.

These cases are before the court on rehearing. They were decided in *Consolidated Produce Co. et al.* v. *United States*, T. D. 47971, adversely to the plaintiff's contention, but a timely application for rehearing was filed and granted. On rehearing the four cases were consolidated and additional testimony relating to all of the cases was adduced. At the original trial, however, each case was tried separately and the records made at the original trials are a part of the record on rehearing.

At the original trial in suit 677439–G the plaintiff called Mr. Arturo Aviles, a bookkeeper for the importing company. He testified that he handled the tomato shipments for the plaintiff; that he attached a lot number to the shipment; that he sold a portion of the shipment to Jones Brothers and a portion to Okuhira Produce Co.; that he supplied those firms with the entry number and the lot number relating to the shipment; that he instructed his customs brokers to file notices of condemnations with the collector together with the department of health certificates of condemnation and that he turned the certificates over to his customs brokers for that purpose. On cross-examination he testified that he did not sort the shipment of tomatoes as his firm was merely a broker but that the firms to whom he sold the tomatoes sorted them.

The next witness called by the plaintiff was Mr. Leon A. Jones who testified that he purchased 481 lugs of "Gontesan" brand of tomatoes from the Pan American Commercial Co. on April 15, 1933; that he received the entry number and the lot number from the importing firm; that the condemned tomatoes were segregated from the good tomatoes of the importation under his personal supervision and they were put in separate containers marked with the identifying number to indicate that they came out of that particular shipment; that the condemned tomatoes were dumped after the Government inspector looked at them; that there were not sufficient Government inspectors employed at the port so that an inspector could remain while the sorting was being done; that when the tomatoes arrived he always called the Government inspector before sorting; that as a rule the Government inspector told him to "go ahead and sort, and a lot of occasions he comes in while we are sorting and when the tomatoes are sorted he gives us our slip"; that he received a condemnation certificate from the health department for each condemnation and the condemnations covered the condemned tomatoes from this shipment and immediately, under his supervision and under his orders, his brother placed the entry number and the lot number on the condemnation certificates; that when the tomatoes were received they were kept separate from all other merchandise on the premises.

The plaintiff introduced in evidence as "Collective Exhibit 1" two notices of condemnation filed with the collector within 10 days after

landing. One of these notices, which contains an official dating stamp showing that it was received at the customhouse on April 24, 1933, notifies the collector of the following condemnations:

4/20/33 — condemning 250 lbs of tomatoes at Louie Produce Co.
4/21/33 —      "      1386 "  "      "      " Jones Bros. Co.

The other notice, which was filed on April 20, 1933, notifies the collector of the following condemnations:

4/18/33 — condemning 632 lbs of tomatoes at Louie Produce Co.
4/18/33 —      "       960 "  "      "      " Okuhira Produce Co.
4/19/33 —      "       372 "  "      "      " Louie Produce Co.

There is also included in this exhibit a certificate of the department of health showing that 1,386 pounds of tomatoes were condemned at Jones Bros. Co. from lot 192. The following information is written on the back of this certificate:

Ripe Tom. coming out of original. not saleable
Entry #6925
Boat
Dumped 1386 lbs.
Jones Bros.
4/21  Quantity OK   (signed) S. C. Wilson.
Pan-American Commercial Company, Los Angeles, Calif. (signed)
    A. Aviles

Another paper attached to this exhibit appears to be the collector's notice to the inspectors to investigate the condemnation. It is dated May 8, 1933. The inspector's report, which appears on the bottom of this document, contains the statement:

4015 lbs. net tomatoes condemned. Quantity and identity established. 2346 # tomatoes, identity not established.

Condemned quantity disposed of by dumping into garbage truck under Customs supervision.

(signed)   S. C. Wilson
                Inspector
          E. S. Glazer
                Inspector

The following appears on the back of the document:

1386#—This accumulation of dumpage is not the result of the 1st sorting. Identity of tomatoes lost after 1st sorting.

960#  Original importer sold tomatoes. Inspectors not advised of sale. This dumpage accumulated at buyer's premises. Could not be connected with any particular importation. Other tomatoes in process of sorting at time this dumpage was accumulated.

The plaintiff introduced, as "Exhibit 2, 677439-G," a condemnation certificate of the department of health covering 960 pounds of tomatoes condemned at Okuhira Produce Co. On the back of this

exhibit appears the entry number as "6925," the lot number as "192," and the following:

> 647 Lugs
> 960# Dumped
> 4–18–33
> Okuhira Produce Co.
> 4/18  Quantity OK  (signed)  S. C. Wilson
> Pan-American Commerce Company
> (signed)  A. Aviles.

This exhibit is attached to and seems to refer to the second notice of condemnation, above referred to and marked "Exhibit 1, 677439–G." No testimony was introduced by the importer concerning the method of sorting and the condemnation on the premises of the Okuhira Produce Co. other than the certificate of condemnation filed as "Exhibit 2, 677439–G," and the notice of condemnation filed as part of "Exhibit 1, 677439–G."

At the original trial of protest 677444–G, the plaintiff introduced the testimony of Arturo Aviles, who testified that he sold a portion of the shipment covered by this protest to Jones Brothers; that he informed Jones Brothers of the entry number and the lot number. On cross-examination he testified that no member of his firm put the lot number on the boxes themselves.

The next witness called by plaintiff was Mr. Leon Jones who testified that on April 14, 1933, he purchased a quantity of tomatoes from the Pan American Commercial Co. and they supplied him with the entry number and the lot number; that he kept the tomatoes in a separate place apart from other merchandise; that a portion of the tomatoes were condemned by the board of health; that the condemned tomatoes were segregated from the good ones under his personal supervision; that the condemned tomatoes were later dumped in the garbage under customs supervision; that on April 22, 1933, he received from the department of health a condemnation certificate covering 1,936 pounds of condemned tomatoes; that on April 19, 1933, he received another condemnation certificate covering 4,244 pounds of tomatoes; that on April 20, 1933, he received another condemnation certificate covering 2,165 pounds of tomatoes; that the three condemnation certificates covered tomatoes condemned out of this particular shipment. It was stipulated between the parties that the three condemnation certificates mentioned by the witness covered the condemned merchandise for which the collector refused to make allowance.

On cross-examination the witness testified that there were no identifying marks on the boxes he received from the Pan American Commercial Co. other than a label and the label did not have the entry number on it; that he bought tomatoes from the Pan American

Commercial Co. every week; that the tomatoes remained in his warehouse "sometimes 5 days, sometimes a day, and sometimes 10 days"; that sometimes he has more than one sorting, sometimes two, and sometimes three; that the bad tomatoes from each sorting were condemned as it is sometimes difficult to pick out all the good tomatoes in the first sorting.

The condemnation certificates referred to by the witness together with the notices of condemnation filed in the customhouse by the plaintiff were introduced in evidence by the plaintiff and were marked "Exhibit 1, 677444–G." One of the notices of condemnation, filed April 20, 1933, contains the following description of the condemned merchandise:

```
4/18/33 — condemning 1060 lbs. tomatoes at Jones Bros.
4/19/33 —      "      4244  "      "    "    "     "
```

Another notice, filed April 24, 1933, contains the following:

```
4/21/33 — condemning 2165 lbs. of tomatoes at Jones Bros.
4/21/33 —      "      1148  "   "      "      "    "    "
```

A third notice, filed April 25, 1933, contains the following:

We are attaching hereto Condemnation Ticket issued by the City of Los Angeles, Department of Health, under date of April 22, 1933, condemning 1936 pounds of tomatoes out of the above mentioned entry, have been condemned at Jones Bros.

There is attached to Exhibit 1, 677444–G, an inspector's report which appears at the bottom of the collector's notice to the inspectors to make an investigation, dated May 8, 1933. The inspector's report is as follows:

4501 lbs. net tomatoes condemned. Quantity and identity established. 7298# tomatoes, identity not established.

Condemned quantity disposed of by dumping into garbage truck under Customs supervision.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

7298# Identity not established. This is not the result of the first sorting. Identity lost after 1st sorting.

At the original hearing of suit 677445–G, it was stipulated between the parties that Mr. Arturo Aviles would testify in this case the same as he did in suit 677444–G and that he sold tomatoes to Jones Brothers out of this shipment. Mr. Leon A. Jones was called and it was agreed that his testimony would be the same as in suit 677444–G. The plaintiff introduced as "Exhibit 1, 677445–G" a notice of condemnation filed in the customhouse on May 1, 1933, containing the following data relating to the condemnations from the entry:

```
4/27/33 — condemning  758 lugs of tomatoes at Jones Bros.
4/27/33 —      "       838  "   "      "      "    "    "
4/28/33 —      "       890  "   "      "      "    "    "
2/28/22 —      "      1644  "   "      "      "    "    "
```

Department of health certificates are attached to this exhibit showing condemnations of the following on the dates specified:

April 27, 1933 — 28 lugs 758# Tomatoes, Mex.
April 28, 1933 — 64 lugs 1644# Tomatoes, Mex.
April 27, 1933 — 838# Tomatoes, Mex.
April 28, 1933 — 890# Tomatoes, Mex.

The lot number is given on each of the certificates as 195 and on the back of the certificates appears the entry number 7121, together with the number of pounds of tomatoes condemned, and the statement "Quantity OK, S. C. Wilson." It is noted that the notice of condemnation describes the tomatoes condemned as a specified number of "lugs" while the condemnation certificates relate the number of pounds condemned, the number of lugs in the one being the same as the number of pounds in the others. Evidently the word "lugs" in the notice of condemnation was intended to refer to "pounds."

Attached to this exhibit is the report of the inspectors at the bottom of the collector's notice to the inspectors to make an investigation, dated July 5, 1933. The inspectors' report reads as follows:

4944 lbs. net Tomatoes condemned. Quantity and identity established. 2402 lbs. net Tomatoes, Identity not established.

  *       *       *       *       *       *       *

1644
758
———

2402# — Identity not established a/c this is an accumulation of dumpage resulting from condemnation subsequent to the 1st sorting. Identity lost after 1st sorting.

At the original hearing of suit 677458–G it was stipulated between the parties that the testimony of witness Arturo Aviles and Leon A. Jones in suit 677444–G would be the same in this case. It was agreed also that the certificate of condemnation, dated May 5, 1933, covering 1,844 pounds of tomatoes and a notice to the collector, received May 8, 1933, be received in evidence and marked "Collective Exhibit 1, 677458–G" for the purpose of showing the date and the quantity of tomatoes condemned and the date when the notice was received by the collector. It was agreed also that the collector refused to allow for 740 pounds of tomatoes condemned. The notice of condemnation specifies the following condemnations:

5/3/33 — condemning 1384 pounds of tomatoes at Jones Bros.
5/5/33 —      "    1844   "   "   "   "   "   "

The back of the condemnation certificate introduced in evidence contains the statement "Dumped 1844 pounds," "entry 7203," and the statement in lead pencil "5/5 Quantity OK, S. C. Wilson."

Also there is attached to this exhibit an inspector's report at the bottom of the collector's notice, dated July 6, 1933, to the inspector in charge to investigate. The inspector's report reads as follows:

3683 lbs. net Tomatoes condemned. Quantity and identity established. 740 lbs. net Tomatoes Identity not established.

\* \* \* \* \* \* \*

740# Identity not established. 37 lugs @ 20 # ea=740#. These were ripe tomatoes that dealer could not sell. They were good tomatoes sorted out of an importation and had lost their identity after the 1st sorting.

At the proceedings on rehearing, the four cases were consolidated for trial and the plaintiff called Mr. Frank W. Schoeppe, a liquidator in the office of the collector of customs at Los Angeles who liquidated the entries covered by these suits. He testified that he disallowed certain claims for refund. The witness was shown the papers in Collective Exhibit 3 in protest 677450–G and he testified that his answers in the case in suit 677450–G would be the same if the same questions were propounded to him in this case with respect to the documents in that exhibit. The plaintiff offered the exhibit in evidence in this case, and, without objection, the same was received and marked "Plaintiff's Collective Exhibit 3, 677439–G."

The witness was asked if he prepared the collector's answers to the protests in this case and he stated that he did and that so far as he was concerned they were true and correct. The collector's answers to the various protests were not specifically offered in evidence but in order that the answer of the witness may be understood, we quote the answer in protest 677439–G, as follows:

3919 boxes tomatoes in their natural state weighing 114605 pounds less 4015 pounds, condemned, equals 110590 pounds @ 3¢ per pound.

Non-allowance of refund on 2346 pounds condemned and claimed under provisions of Sec. 506 (2), Tariff Act of 1930, and Articles 806 and 807, Customs Regulations of 1931, account identity of condemned portion not established in accordance with provisions of Art. 807 (a), Customs Regulations of 1931.

960 pounds—Original importer sold tomatoes. Inspectors not informed of sale. This dumpage accumulated at buyer's premises and could not be connected with any particular importation. Other tomatoes on premises and in process of sorting at time this dumpage was accumulated.

1386 pounds—This entire quantity is over-ripe tomatoes. These tomatoes were the good tomatoes sorted out of an original importation. They became over-ripe as the result of a dull market. The connection with any particular importation is lost after tomatoes are removed from lugs in which imported for the first sorting. Thereafter there is no physical difference between the appearance of tomatoes from two or more importations. See Bureau's letter of February 21, 1933 (last paragraph) attached to Dutiable Entry 6816, Protest 17169. (continued on page 2.)

The next seven pages of the report consist of mimeographed matter showing that the collector issued circular letters to importers of perishable merchandise with directions as to procedure. Some of the matter consists of copies of letters addressed to customs officers, customs brokers, and others concerned at different dates, and there are two copies of letters directed to the collector by the Associated

Produce Dealers and Brokers of Los Angeles, agreeing to certain parts of the procedure suggested by the collector.

The witness testified that on May 8, 1933, he issued instructions to the inspectors to investigate the notices of condemnation filed in the customhouse on April 20 and April 24 in connection with the entry covered by protest 677439–G; that on May 8, 1933, he issued instructions to the inspectors to investigate the condemnation notices filed in the customhouse on April 20, 24, and 25 in connection with the entry covered by protest 677444–G; that on July 5, 1933, he issued instructions to the inspectors to investigate the notice of condemnation filed in the customhouse on May 1 in connection with the entry covered by protest 677445–G; that on July 6, 1933, he issued instructions to the inspectors to investigate the condemnation notice filed in the customhouse by the importer on May 8, 1933, in connection with the condemned merchandise covered by protest 677458–G.

The witness testified further that he did not know when the inspectors made their reports; that he never notified the importers that he was going to reject their claims for relief prior to the time he liquidated the entries and he did not request them to produce any additional evidence as to the identity of the merchandise condemned; that he relied on the inspector's report in each case as the basis for allowance or disallowance of the claim for refund; that he made no attempt to ascertain whether or not the two inspectors who made the report actually physically examined the goods. On cross-examination he was asked if he knew whether the importers filed any affidavits in connection with the entries and he stated that he did not know.

The next witness called by the plaintiff was Mr. Ernest S. Glazer who was the inspector in charge at the time of the shipments covered by these suits. He testified that he signed the inspector's report; that he did not recall having seen the merchandise; that the reasons why he could not identify the condemned merchandise are written on the various reports; that where it is stated in the reports that the merchandise was not from the first sorting he relied on a review and perusal of the record and upon the result of a conference with inspector Wilson who collaborated with him in making the investigation; that he looked at the documentary evidence prepared by Mr. Wilson; that he had no recollection as to the time he took to make his investigation; that in making such investigation he did not attempt to call upon any of the importers. The witness examined the documents filed by the importers which are in the exhibits in the different cases and testified that there is nothing therein to indicate that the condemnations rejected were from the second sortings of the tomatoes. The witness was interrogated with respect to the assigning of only one inspector to examine condemnations and he testified that when there were too

many markets for one man to cover in a day he assigned an additional inspector to cover the additional markets but the inspectors did not cover the same route together.

The attention of the witness was directed to a letter dated March 10, 1933, in plaintiff's Collective Exhibit 3 (also introduced as Collective Exhibit 3 in suit 677450–G tried at the same calendar) and he was asked if that letter constituted a requirement laid down by the collector's office prohibiting an allowance for refund on condemnations resulting from a sorting subsequent to the first sorting, and the witness replied that "it does." He testified further that in each of the cases now before the court his report indicated that the condemnations which were not approved resulted from a second sorting; that the collector informed the importers that no allowance would be made for condemned tomatoes from second or subsequent sortings; that he followed the ruling when he could not identify the merchandise; that some of the rulings of the collector, in plaintiff's Collective Exhibit 3 were flexible, and, where such was the case, he used his discretion; that sometimes the written instructions were modified by oral instructions permitting inspectors to use their discretion and the importers knew that at times the inspectors deviated from the collector's instructions in favor of the importers because in such case he would tell the importer that he would recommend that allowance be made. The witness testified further that in making his investigation he had before him the pink carbon copies of the condemnation certificates which Mr. Wilson turned in and the letters and documents which were in the files; that requests for an investigation were always made so long after the condemnations that the merchandise had been disposed of; that during the first sorting the tomatoes were taken out of the cases having an identifying mark and are put into boxes having no similar identifying mark; that if the tomatoes were put into boxes having an identifying mark the inspector could identify it.

On cross-examination the witness was asked what documents he examined in making his investigation and he enumerated the documents giving the dates thereof and other identifying data. We have examined the papers in the jacket in protest 677439–G and find that the witness identified all of the papers therein contained including those which were not introduced in evidence, such as letters notifying the collector of the quantities from the shipment which had been sold to another dealer.

The next witness called by the plaintiff was Mr. Samuel C. Wilson who was an inspector at the time of the importations covered by these cases. He testified that he signed the reports to the collector regarding the condemnations; that he did not make any attempt to inspect any of the merchandise condemned after the collector's instructions to investigate were received; that there was no inspection of the

condemned merchandise after the notices of condemnation were filed with the collector; that his inspection of the condemned tomatoes was made prior to the time the claims for refund (notices of condemnation) were filed with the collector; that after the receipt of the collector's instructions to investigate he did not make any request upon the importers to furnish evidence as to the identity of the merchandise.

On cross-examination the witness testified that after the notices of condemnation were filed in the customhouse the condemned merchandise was not at the place specified in the notice of condemnation and he was not able to identify the tomatoes. As to the merchandise covered by the condemnation certificates which certificates were rejected in connection with the entry covered by protest 677445–G, the witness testified that the condemned tomatoes did not have a lot number attached. He gave the following further reason for his failure to identify:

This merchandise was held on the importer's premises for 1 or 2 days after being segregated from the original importation, and during that time it was moved about and not kept in any one place, and so mixed up with other merchandise on the floor that I couldn't identify it as coming out of any particular importation.

Two copies, on pink paper, of the condemnation certificates in Collective Exhibit 1, protest 677445–G, were admitted in evidence and marked "Defendant's Collective Exhibit 2, 677445–G." They appear to be duplicates of the condemnation certificates on white paper in Collective Exhibit 1, 677445–G, except that in place of the notation "4/28, Quantity OK, S. C. Wilson" on the back of the white certificates, the words "Ripe not sold" appear in lead pencil on the back of the duplicates. The witness testified that the duplicate certificates on pink paper were handed to him by the dealer who sorted the tomatoes. He was asked as to his practice in cases where condemned merchandise was from a second sorting and he stated:

My instructions from Mr. Salter were that in every case where I was able to establish the identity of the merchandise to my satisfaction I was to so report to the collector, regardless of whether the importer had complied with any or none of the so-called regulations.

Like questions were propounded to the witness with respect to the condemnations upon which claim is made in suits 677439–G, 677444–G, and 677458–G and his answers were substantially the same.

Duplicates on pink paper of the condemnation certificates were admitted as a part of Collective Exhibits 1 and 2, 677439–G, and they were admitted in evidence and marked "Defendant's Collective Exhibit 3, 677439–G." The duplicates are the same as the originals except the duplicate of the certificate in Exhibit 1 contains on the back a pencil notation "N. G. Ripe not sold. No refund S. C. W." in place of the notation on the original reading "4/21 Quantity OK,

S. C. Wilson." The duplicate of the condemnation certificate in Exhibit 2 contains the words "No notice of sale. Could not identify S. C. W." rather than the notation "4/18 Quantity OK, S. C. Wilson" on the original.

On redirect examination the witness testified that he could not say when he made the notation "no refund S. C. W." on the duplicate condemnation certificate, but the notation "No notice of sale" on the back of the duplicate certificate covering 960 pounds of tomatoes was placed thereon on April 18, which is the date the merchandise was condemned, and the words "Could not identify" may have been placed on the exhibit at the same time or it might have been put on later.

On further cross-examination the witness explained the purpose of the memorandum as follows:

These pink copies were merely memorandums for the inspector who made the inspection to refresh his memory from, and the notation as to the facts that existed on there were put on there at the time the ticket was presented to me, or shortly after. Now, then any other notations on there as to any conclusion I might have arrived at from those facts may have been put on there at that time or they may have been put on there at the time Mr. Glazer and I made our investigation.

The witness produced duplicates of the three condemnation certificates in Collective Exhibit 1, 677444–G, and they were received in evidence and marked "Defendant's Collective Exhibit 2, 677444–G." One of them, which covered 4,244 pounds of tomatoes, contains the notation "Check delivery. Part ripes held over. No allowance per Mr. Salter's instructions. No refund" in place of the words "4/19 Quantity OK, S. C. Wilson" on the original. Another contains the notation "43 lugs ripe 889#. No refund. 1047# OK," whereas the original copy in Exhibit 1 contained the notation "4/22 Quantity OK, S. C. Wilson." The third pink duplicate contains the notation "Ripes not sold. No refund. NG," whereas the original in Exhibit 1 contains the words "4/22 Quantity OK, S. C. Wilson."

The witness testified that all the notes in lead pencil were in his handwriting. He was asked when the notes were placed on the back of the duplicates and he replied:

I don't recall the date that I placed the "No allowance, per Mr. Salter" because at the time this ticket was presented to me I made the notation on there to check delivery in order to—that was a memorandum to me that I questioned whether this party had been delivered as many lugs of tomatoes as he was claiming dumpage from, because in our investigation the papers that were before us at our investigation covered several other condemnation tickets which were issued to this same dealer on the same importation. I made that notation "Check delivery" on there to refresh my memory that I should check our records to see whether the importer had received as many lugs as he claimed he had; and then the "Part ripes held over," that was placed on there at the same time, and it was subsequent to that time I had a conference with Mr. Salter and thereafter I followed his instructions.

When asked whether or not his conference with Mr. Salter occurred before the importer filed his claim for refund, he replied "My answer is that the importer may have filed his claim before I had a chance to confer with Mr. Salter. I am not positive." The witness explained why he could not identify the dumpage covered by the protest as follows:

Sometime subsequent a condemnation ticket was issued covering these tomatoes. During the time they had been held on the importer's floor after they were sorted from the lugs in which they were originally imported they were held in boxes which were not marked in any manner for identification, were not kept in one place, and in fact were shifted about on the importer's floor several times. Therefore, I was unable to identify this merchandise as being part of any particular importation; and that statement is also true, all the foregoing is true in connection with the ticket dated April 21st.

Now in regard to the ticket dated April 22nd I cannot tell from the inspector's report or the liquidation of the entry whether at the time we made an investigation as to the identity of the merchandise whether the entire amount condemned on this ticket—whether we refused to identify the entire amount on this ticket or not. I have a notation on there that there was 1,047 pounds out of 1,936 pounds which at the time this ticket was presented to me I did not question the identity of. I didn't know whether they were, but so far as I knew at the time I was reasonably sure that the importer's claim was correct, but there was 889 pounds which I was unable to identify, for the reasons stated in connection with the tickets dated April 21st and April 19th.

The pink duplicate of the condemnation certificate, which is a part of Collective Exhibit 1, 677458–G, was admitted in evidence and marked "Defendant's Exhibit 2, 677458–G." On the back of the pink duplicate appears the words "37 lugs @ 20 740# N. G." whereas the original condemnation certificate contains the words "5/5 Quantity OK, S. C. Wilson" in the same handwriting.

The witness testified that the notation "37 lugs @ 20 740 pounds N. G." was placed on the duplicate by himself and that "it is just as I stated before, this is merely a memorandum. It is in no way an official report; merely a memorandum for the aid of myself and Mr. Glazer in a subsequent investigation." When asked why he refused to identify the merchandise he said:

I had reasons to believe or I knew that 37 lugs which averaged 20 pounds each of tomatoes, on which the importer was not entitled to a refund, were included in this total of 1844 pounds as shown by this condemnation ticket. Therefore, on subsequent investigation we did allow the importer the difference between 740 pounds and 1844 pounds, or did report to the collector that we could establish the identity of the difference between 740 pounds and 1844 pounds covered by this condemnation ticket.

On redirect examination the various dates when the notices of condemnation were filed in the customhouse were read to the witness and he was asked if he went to Jones Brothers to examine the condemned merchandise after those dates and he replied:

There was no attempt made to visit the importer's premises to inspect the merchandise the subject of the condemnation notices which are under protest in these cases after the date that the inspector made his inspection of the merchandise at the time the condemnation notice was presented to him, and that inspection was made prior to the filing of that condemnation notice by the importer with the Collector of Customs.

The witness testified further that no attempt was made to visit the premises of the merchant for the purpose of investigating the condemnations subsequent to the date when the condemnation certificates were presented to the inspector; that after he inspected the condemned goods he told the dealer to remove the dumpage from the premises.

R. Q. You told them that it was not necessary for them to hold the merchandise for the inspection of the collector's office at the premises mentioned in the notices of condemnation after you had inspected them?—A. That is right.

R. Q. And in every instance herein you inspected the merchandise, did you not?—A. I did.

When asked what his instructions were, the witness replied:

A. That I was to visit the importer's premises and if I was presented with a condemnation ticket covering the imported vegetables I was to ascertain that the facts as set forth in that condemnation ticket were correct, also to observe and to make memorandum if I felt necessary of any conditions which existed on those particular premises, and to make any other observations that I thought might be pertinent as to determining whether the facts as claimed by the importer at the time he presented these condemnation tickets to me were true or false.

The witness was interrogated concerning his practice of retaining the pink duplicate condemnation certificates and he explained the practice as follows:

At one time, at the start of the season, if my memory serves me correctly—it only being 6 years ago—for a short time when these tickets were presented in duplicate it was the practice of the inspector to keep the original and return the duplicate to the importer. Now, shortly after, that practice only lasted for a short time, and I don't know as to who brought it up or what it was, but finally it was thought that since the importer was required to file a notice of that condemnation with the collector it was probably best that that document, which would be official, should be the original copy. So we discontinued the practice of keeping the white copy, which is the original, and returning the duplicate to the importer or dealer, and instigated the practice which was followed in regard to these 4 particular protests here, in which the inspector kept the pink duplicate and returned the original white copy to the importer or dealer.

The witness testified further that he could not have reported to the collector the quantity and identity of the condemned merchandise without having made a physical inspection thereof prior to the date when request was made for an investigation and that he did not recall whether he was present when the board of health condemned any of the merchandise covered by the suits in this case.

The pertinent parts of section 506 of the Tariff Act of 1930, under which the plaintiff claims relief, read as follows:

·Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

    \*     \*     \*     \*     \*     \*     \*

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

The defendant does not dispute the fact that the plaintiff met all the requirements of section 506 (2) above quoted but another question involved is whether the regulations of the Secretary of the Treasury, made under the authority of the statute, were complied with. Article 807 of the Customs Regulations of 1931, which was in force at the time of these importations, reads as follows:

Art. 807. Notice—Investigation—Allowance.—(a) Upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers, who shall make a report to the collector in writing as to the identity and quantity of the fruit or perishable articles condemned and whether or not the same were condemned within 10 days after landing.

(b) If it appears from the evidence submitted by the importer and the report of the investigating officers that the merchandise was condemned within 10 days after the landing thereof, and a timely notice was filed, allowance for the articles so condemned may be·made in the liquidation of the entry.

The plaintiff introduced in evidence certain documents which were marked "Plaintiff's Collective Exhibit 3, 677439–G." It appears therefrom that in 1933 the collector of customs issued these documents directed to customs officials, customs brokers, and others concerned in Los Angeles as additional regulations. The same exhibit was a part of the record in *Consolidated Produce Co.* v. *United States*, C. D. 246, and also in *Farmers Produce Co. et al.* v. *United States*, T. D. 49495, and the court held that such so-called regulations were not binding on the court. In the latter case the court said:

There was introduced in evidence (Exhibits 2 to 6) certain mimeographed copies of instructions issued by the collector of customs purporting to prohibit customs supervision of the sorting of perishable merchandise after removal from the custody of the importer, providing that, where more than one shipment was on the floor of the importers' place of business, each shipment must be held in a separate place, that an identification card must be attached to each lot, that allowance shall be made on the first sorting only, and that no previously sorted lot or lots shall be present on the same premises where the sorting of any shipment is taking place. These exhibits do not bear the approval of the Secretary of the Treasury and were not promulgated by him. Therefore, they are not regulations which have the force of law and bind this court. \* \* \*

Neither the statute nor the regulations of the Secretary of the Treasury confine relief from the payment of duty on condemned perishable merchandise to articles segregated at the first sorting of a ship-

ment and the law is broad enough to permit allowance for any condemned perishable merchandise covered by an entry, provided that condemnations occur within 10 days after the landing of the goods and notice of the condemnation is filed with the collector within 5 days after such condemnation. Furthermore, article 807 (b) of the Customs Regulations indicates that the report of the inspectors is not conclusive but that evidence submitted by the importer shall be considered. The evidence in this case shows that the collector considered nothing but the inspector's report in the liquidation of the entry and that the importer was not requested to produce evidence and nothing appears to have been submitted by him except the notices of condemnation, with condemnation certificates attached thereto.

When the cases were before the court, the plaintiff had the burden of submitting evidence to support his claim and to show that he had complied with the provisions of the statute by filing in the customhouse timely notices of the condemnations.

The plaintiff did not meet this burden by merely showing that the notice of condemnation on the 960 pounds of tomatoes condemned on the premises of Okuhira Produce Co. was filed in the customhouse within the statutory time in connection with the entry covered by protest 677439-G. He failed to submit proof showing that the condemned merchandise was a part of the shipment. Insofar as claim for refund of the duty assessed on the 960 pounds of tomatoes covered by the condemnation certificate marked "Exhibit 2, 677439-G" is concerned, the protest is overruled.

As to all of the tomatoes condemned on the premises of Jones Brothers, the uncontradicted testimony shows that the condemned merchandise was sorted from the shipments upon which claim is made. This is established by the testimony of witness Jones. Inspector Wilson weighed all of that condemned merchandise and inscribed the words "Quantity OK" on the back of the original condemnation certificates which he returned to the dealer. He made different notations on the back of the pink duplicate condemnation certificates which he retained, however, such as "Ripes not sold," etc., and he testified that the merchandise condemned was from a second sorting, or that there was other merchandise on the premises at the time, or that there was no lot number on the dumpage. These reasons he gave for failing to identify the merchandise show that he was following the collector's directions in "Plaintiff's Collective Exhibit 3, 677439-G" which were held in *Farmers Produce Co. et al.* v. *United States, supra,* not to be binding on the court.

As to all the merchandise condemned on the premises of Jones Brothers, the record is similar to that upon which the plaintiffs' claim was sustained in *Farmers Produce Co. et al.* v. *United States, supra,* or *Consolidated Produce Co.* v. *United States, supra,* and the rulings of

the court in those cases are applicable here. In the latter case the court said:

Article 807 (a) of the Customs Regulations provides that "upon the receipt of a notice of condemnation the collector shall stamp thereon the date of receipt thereof in the customhouse, and shall cause an investigation to be made by two customs officers" but the collector waited over 3 weeks before directing that an investigation be made, that is, he issued the instructions on May 8, 1933, whereas the notices of condemnation were filed in the customhouse on April 11 and April 17, 1933. Manifestly, the collector did not order an investigation "upon receipt of" the notices of condemnation.

\* \* \* \* \* \* \*

The record shows that an affidavit of an officer of the importing company was filed with the collector at the time the condemnation certificates and the notices of condemnation were filed, but Mr. Schoeppe testified that the only evidence that would be considered in liquidation was the report of the inspectors as to the identity and quantity of the merchandise condemned. However, article 807 (b) of the regulations indicates that the collector should consider the evidence submitted by the importer as well as the report of the investigating officers.

In the case of Lauricella et al. v. United States, 4 Ct. Cust. Appls. 253, T. D. 33482, the court, in construing a statute relating to allowance for merchandise condemned by the health authorities similar to that there under consideration, treated the board of health certificates as "proof" or evidence and held that all the statute required the importers to file within the required statutory time after condemnation by the health authorities was the notice of condemnation. The collector evidently erred in this case in not considering the proof or evidence submitted in the importer's behalf.

\* \* \* \* \* \* \*

In the case of Farmer's Produce Co. et al. v. United States, supra, the court held that where the record showed that tomatoes out of the shipments had been condemned within 10 days after landing by the health authorities and notices of condemnation were filed with the collector within 5 days after condemnation, that is, where the importers had done everything required of them by section 506 (2) of the statute, and proof was offered in court showing that the goods were condemned within the statutory time and were destroyed, the importers should be granted relief from the payment of duty on the worthless merchandise. Other cases where the importers have been granted relief where the customs officers failed to make a favorable report on the condemned merchandise are Calavo Growers of California v. United States, T. D. 46687 and Scaramelli Co. v. United States, Abstract 38109.

The positive testimony of Mr. Jones in this case indicates that the tomatoes condemned on his premises, upon which claim is made, came out of the importations herein involved while the inspectors made an unfavorable report because they were not sure whether they came out of the importations. The inspectors had no positive evidence and did not inform the dealer of their suspicions or conclusion. They admitted that they did not request proof from the dealer in order to substantiate the claim.

We find from the record that the merchandise enumerated below consists of condemned tomatoes from the shipments, for which the

collector made no allowance, and that the condemnations occurred within 10 days after landing and timely notices of such condemnations were filed in the customhouse:

Protest 677439–G 1386 pounds of tomatoes
" 677444–G 7298 " " "
" 677445–G 2402 " " "
" 677458–G 740 " " "

The claims in the protests are sustained insofar as they relate to the above-described merchandise, and to that extent judgment will be entered in favor of the plaintiff.